CITY OF LEXINGTON *v.* BUTLER.

1. The restriction of the 11th section of the Judiciary Act giving original jurisdiction to the Circuit Courts, but providing that they shall not " have cognizance of any suit to recover the contents of any promissory note or *other chose in action,* in favor of an assignee, unless a suit might

have been prosecuted in such court to recover the said contents if no assignment had been made," does not apply to cases transferred from State courts under the act of March 2d, 1867, giving to either party in certain cases a right to transfer a suit brought in a State court where either makes affidavit, &c., " that he has reason to believe, and does believe, that from prejudice or local influence he will not be able to obtain justice in such court."

2. Independently of this, negotiable paper (within which class coupons to municipal bonds, if having proper words of negotiability, fall) is not regarded as falling within the exception.

3. When a corporation has power under any circumstances to issue negotiable securities the *bonâ fide* holder has a right to presume that they were issued under the circumstances which give the requisite authority, and they are no more liable to be impeached for any infirmity in the hands of such a holder than any other commercial paper.

4. A municipal corporation on a suit against it for bonds issued to a railroad, set up that the plaintiff had notice of certain proceedings, which (as the plea alleged) destroyed the plaintiff's right to sue. The plaintiff replied, denying the notice. The city demurred to the replication. *Held*, that the city thus admitted that he had no notice.

5. A suit upon a coupon or interest warrant to a bond is not barred by the statute of limitations, unless the lapse of time is sufficient to bar also a suit upon the bond.

THE 11th section of the Judiciary Act enacts:

"The Circuit Court shall have original cognizance of all suits . . . between a citizen of the State where the suit is brought and a citizen of another State."

It is enacted by the same section:

"That no Circuit Court shall have cognizance of any suit to recover the contents of any promissory note or other *chose in action*, in favor of an assignee, unless such suit may have been prosecuted in such court to recover the said contents, if no assignment had been made, except in cases of foreign bills of exchange."

The 12th section, however, of the same act enacts:

"That if a suit be commenced in any State court against an alien or by a citizen of the State in which the suit is brought against a citizen of another State, . . . . and the defendant shall at the time of entering his appearance in such State court file a petition for the removal of the cause for trial into the next Circuit Court, . . . . and offer good and sufficient surety for his

entering in such court on the first day of its session copies of said process against him, and also for his there appearing . . . . it shall then be the duty of the State court to accept the surety and proceed no further in the cause; . . . and the said copies being entered as aforesaid in such court of the United States, the cause shall there proceed in the same manner as if it had been brought there by original process."

By a statute of March 2d, 1867, this right of removal was extended to controversies in any State court, between a citizen of the State where the suit is brought and a citizen of another State, in cases where either party—plaintiff or defendant—shall, any time before final hearing,

"Make and file in such State court an affidavit stating that he has reason to and does believe, that from prejudice or local influence, he will not be able to obtain justice in such State court."

With these statutes in force the city of Lexington, Kentucky, acting under the authority of an act of the legislature of Kentucky, issued in 1853 to the Lexington and Big Sandy Railroad Company, one hundred and fifty bonds, each for $1000, having thirty years to run, and bearing an interest of 6 per cent. per annum, payable semi-annually, for which coupons were annexed to the bonds. The coupons were payable "to bearer."

The bonds bore the corporate seal of the city and were signed by the mayor, and countersigned by the city clerk. They were payable to the Lexington and Big Sandy Railroad Company or order at the Bank of America, New York, and were indorsed and assigned by the railroad company to bearer. They recited upon their face that—

"This certificate is used in part payment of a subscription of $150,000 by the city of Lexington to the capital stock of said Lexington and Big Sandy Railroad Company, *by order of the mayor and council of said city, as authorized by a vote of the people taken in pursuance of an act of the General Assembly of the Commonwealth of Kentucky incorporating said railroad company, approved the 9th of January,* 1852."

They were sold in market overt by the railroad company, and being by the indorsement made payable to bearer, circulated by delivery from hand to hand. J. C. Butler, a citizen of Ohio, became the owner of four of them. The coupons for a number of years being unpaid, he brought suit in a court of the State of Kentucky for the recovery of the amount of them. Before the trial came on, he removed the cause into the Circuit Court of the United States for the District of Kentucky, for trial, under the already-quoted act of Congress of March 2d, 1867, and on bringing the transcript of the cause into the Circuit Court, he filed a declaration in debt in that court, in conformity with the rules of proceeding in causes removed from the State court. To this declaration the city of Lexington filed two pleas in bar.

*First plea.* That the city was authorized to make the subscription of the $150,000, on condition that a majority of the qualified voters of the city should cast their votes in favor of the subscription, and that without such a vote the city had no authority to make the subscription; that the vote was cast in favor of the subscription, but only on the condition that it should not be obligatory until $1,000,000 should be first subscribed by others; that the $1,000,000 not having been subscribed, the city refused to make the subscription or to issue the bonds; that the company thereupon obtained a judgment of mandamus to compel the city to make the subscription and execute the bonds; and that the city was compelled by that judgment, and did so make the subscription and issue the bonds; that the Court of Appeals of Kentucky, however, reversed this judgment; that a rule was then made upon the company to redeliver the bonds in order to be cancelled; but that the company refused to redeliver them; that before the company had negotiated the bonds sued upon, the city obtained an injunction against the issue, and an order that the bonds be deposited with a receiver; that these orders, although process was duly served on the company, were not obeyed; and that both actions were still pending.

The plea then alleged that *it was after all these proceedings and with these actions pending*, that the company transferred and delivered the bonds to Butler; and *that Butler had notice of the proceedings aforesaid before said bonds were transferred to him.*

*Second plea.* As to the coupons the city pleaded a statute of limitations, applicable to debts not under seal; a statute of five years;—fifteen years being the statutory bar in regard to sealed instruments.

To the first plea the plaintiff replied, traversing the notice and denying all knowledge of any facts set out in the plea when he took the bonds.

To the second plea he demurred.

To the plaintiff's replication to the first plea (the replication denying notice of the proceedings about the bonds) the city demurred.

The court below on the whole case gave judgment for the plaintiff; and the city now brought the case here.

The questions, of course, were:

1st. Whether under the restriction of the 11th section of the Judiciary Act and under the act of March 2d, 1867, the court below had jurisdiction.

2d. Whether the fact that Butler had no notice of the proceedings about the bonds, set up to rebut his *bona fides* and destroy his right to sue (which fact of want of notice was of course admitted by the city's demurrer to his replication), made him, presumably, a *bonâ fide* holder for value, and entitled to sue.

3d. Whether the statutory bar of five years was applicable to coupons to bonds under seal, and where to the bonds themselves nothing less than fifteen would by statute be a bar, or whether the coupons partook of the qualities of the bond in such a way as to be subject to the law which governed them?

*Mr. J. F. Fisk, for the plaintiff in error :*

1. The court below had no jurisdiction. The bonds sued on were made by a corporation or citizen of Kentucky, and

were payable to the order of the railroad company, another citizen or corporation. If no assignment had been made then certainly under the 11th section the Circuit Court would have had no jurisdiction, the suit being between citizens of the same State. It is only in virtue of the assignment which was made by the indorsement that Butler, a citizen of Ohio, has any rights. But the same 11th section says that the Circuit Court shall not have cognizance of any suit to recover any *chose in action* in favor of an assignee, unless the suit could have been prosecuted in the same court if no assignment had been made.

2. The facts alleged in the plea other than that of notice—which is the only part of the plea traversed—are sufficient to bar the action. The allegation of notice was not necessary. Butler was bound to take notice of the proceedings. The rule of *lis pendens* applies; a rule than which none has been established on higher authority or with more uniform sanction, one also peculiarly applicable to negotiable paper.

3. The court held the bonds negotiable and yet held that the statute of limitations governing promissory notes did not apply. This was plain error. Even if the bonds which were sealed did not come within the statute of five years, the coupons, which were not sealed—mere ordinary promises, did.

*Mr. J. W. Stevenson, contra :*

1. *As to the jurisdiction.* The whole argument of the other side on this point has no foundation. Since the case of *Bushnell* v. *Kennedy,** in which it was decided that the restriction of the 11th section as to the right to sue on *choses in action* assigned, not being found in the language of the 12th, and the reasons for its being in the 11th not existing for its being in the 12th, " it is not to be considered as applying to cases transferred from State courts to the Circuit Courts under this latter section." The decision applies equally to cases transferred under the act of March 2d, 1867.

* 9 Wallace, 387.

2. *As to the demurrer of the city to the replication.* The plea, to which this replication was filed, went on to set forth a state of facts from which it was to be inferred the bonds were issued without authority of law. In the face of bonds which recite that they *were* issued by authority of law, such a plea would be bad, unless it also showed that Butler was not an innocent holder for value. The law presumes in favor of the holder: (1) that he took the bonds before they were due; (2) that he paid a valuable consideration for them; and (3) that he took them without notice of any latent defect which would render them invalid.* The plea did not dispute the first two points, to wit: That Butler took the bonds before they were due and paid a valuable consideration for them. Hence these two presumptions stood in his favor, notwithstanding the plea. It did, however, aver that at the time he took the bonds he had notice of the facts set forth in the plea and relied on as rendering the bonds invalid. It was this averment of notice alone that rendered the plea good.

The replication traversed the averment of notice, and denied all knowledge or notice of any of the facts set out in the plea at the time the plaintiff took the bonds.

By demurring to the replication the city confessed Butler's denial of notice to be true, and thereby confessed away an allegation in its plea which was absolutely necessary to render it good.

3. *As to Butler's demurrer to the second plea.* This plea is an attempt to rely upon the statute of limitation of five years, in force in Kentucky, to actions on simple contracts. But the obligation to pay this interest is embodied in the bond itself, which is a specialty, under seal, and of a higher nature than simple contracts. Therefore no lapse of time, short of fifteen years, would bar an action on the bond, that being the period of limitation to actions upon specialties by the statute of Kentucky. That bonds of this character are special-

---

* Bronson *v.* La Crosse, 2 Wallace, 283; Woods *v.* Lawrence, 1 Black, 386; Alexander *v.* Springfield Bank, 2 Metcalfe, 534; Nelson *v.* Cowing, 6 Hill, New York, 339.

ties, and that the coupons attached to them partake of their character and are governed by the same term of limitation as governs the bond itself, was ruled by this court in *The City* v. *Lamson.*[*]

Mr. Justice CLIFFORD delivered the opinion of the court.

Subscription to the stock of the Lexington and Big Sandy Railroad Company was made by the corporation defendants to the amount of one hundred and fifty thousand dollars, and on the fifteenth of October, 1853, they, as the municipal corporation of Lexington, issued one hundred and fifty bonds, each for one thousand dollars, sealed with the corporate seal and signed by the mayor and clerk of the corporation. By the terms of the bonds they are payable to the railroad company or order, at the Bank of America, in thirty years from date, with interest semi-annually at the rate of six per centum per annum, also payable at the same bank in the city of New York. Interest warrants were annexed to each bond, whereby the municipal corporation undertook and promised to pay to bearer the several instalments of interest provided in the bonds, as the same matured and became payable.

Pursuant to that arrangement the railroad company became the lawful owners and holders of the whole of those bonds; and they, as such holders and owners, indorsed the bonds in blank and transferred the same to divers persons or corporations as the means of borrowing money to construct their railroad, and the plaintiff in that way, as he alleges, became the purchaser and owner of four of those bonds with the unpaid interest warrants annexed. Payment of the interest being refused the plaintiff instituted the present suit in the State court to recover the amount of the interest overdue, as more fully appears in the petition or declaration filed in the State court where the suit was commenced. Service was made and the defendants appeared, and on their motion the cause was continued. Subsequently

---

[*] 9 Wallace, 477.

the plaintiff filed a petition and affidavit for the removal of the cause into the Circuit Court of the United States, for trial, alleging as the ground of the application that he had reason to believe and did believe that from prejudice and local influence he would not be able to obtain justice in the State court, and the applicant having given bond as required by law the cause was removed into the Circuit Court of the United States for that district.*

Two special pleas were filed by the defendants in bar of the action:

I. That they were not liable to pay either the bonds or the interest on the same because the conditions precedent to the right of the corporation to subscribe for the stock of the railroad company and to issue the bonds were never fulfilled; that the conditions annexed to the right, as enacted by the legislature, were that the proposition to subscribe should be submitted to the qualified voters of the corporation, and that it should be approved by a majority of the persons voting on the question; that three conditions were embodied in the proposition as submitted to the voters, as specifically set forth in the plea; that the proposition as submitted did not authorize a subscription unless a million of dollars were previously subscribed by other parties; that other parties not having subscribed that amount the authorities of the corporation refused to make the subscription, and that the State court on the application of the railroad company issued a mandamus and compelled the authorities of the corporation to make the subscription and issue the bonds; that the defendants appealed to the Court of Appeals, where the judgment of the subordinate court was reversed, the Court of Appeals holding that the corporation had no authority to subscribe for the stock or to issue the bonds until one million of dollars had been subscribed by other parties; that the action was thereupon redocketed and a rule laid upon the railroad company to redeliver the bonds to the defendants to be cancelled; that the railroad company in the mean-

---

* 14 Stat. at Large, 559.

time deposited forty-eight of the bonds with an agent with directions to sell the same for their benefit; that before the bonds were negotiated or transferred they, the defendants, obtained an injunction and an order of court that the same should be deposited with a receiver of the court to be sold, and that the proceeds should be applied under the order of the court, and the defendants allege that the action is still pending and that the order of the court was never obeyed; that the bonds described in the declaration are a portion of those bonds, and that the plaintiff, when the bonds in suit were transferred to him, well knew of the pendency of said actions and of the judgments and orders therein, and that the bonds had been issued under and by virtue of said writ of mandamus.

II. That the cause of action did not accrue to the plaintiff within five years next before the action was commenced.

To the first special plea of the defendant the plaintiff filed a replication, in which he denied that he had any knowledge, notice, or information whatever, before or at the time the bonds were transferred to him, of the pendency of said supposed actions, or any or either of them, or of the supposed judgments or orders in those actions, or that said bonds had been issued under or by virtue of the said writ of mandamus, in manner and form as the defendants have alleged and tendered an issue, and the defendants demurred to the replication and the plaintiffs joined in demurrer.

On the other hand the plaintiffs demurred to the second plea of the defendants and the defendants joined in demurrer, so that both pleas terminated in an issue of law for the decision of the court; and the court overruled the demurrer of the defendants to the replication of the plaintiff and sustained the demurrer of the plaintiff to the second plea of the defendants, and gave judgment for the plaintiff in the sum of three thousand six hundred and thirty dollars and six cents, being the amount of the debt demanded in the declaration. Dissatisfied with the judgment of the court the defendants sued out a writ of error and removed the cause into this court. ·

Three errors are assigned by the original defendants: (1.) That the court erred in rendering judgment for the plaintiff, as the court had no jurisdiction of the case. (2.) That the court erred in overruling the demurrer of the defendants to the replication of the plaintiff filed to their first special plea. (3.) That the court erred in sustaining the demurrer of the plaintiff to the second plea of the defendants.

Jurisdiction of the case is denied by the defendants because, as they insist, the suit is founded on a cause of action which could not properly be removed from the State court into the Circuit Court, where the judgment was rendered, but the objection is not well founded, as will be seen by reference to the twelfth section of the Judiciary Act and the amendatory act under which the removal in this case was made. Where a suit is commenced in any State court, in which there is a controversy between a citizen of the State in which the suit is brought, and a citizen of another State, and the matter in dispute exceeds the sum of five hundred dollars, exclusive of costs, such citizen of another State, whether he be plaintiff or defendant, if he will make and file in such State court an affidavit stating that he has reason to, and does, believe that from prejudice or local influence he will not be able to obtain justice in such State court, may at any time before the final hearing or trial of the suit, file a petition in such State court for the removal of the suit into the next Circuit Court of the United States, to be held in the district where the suit is pending. Authority to remove such a suit is given by that act to the plaintiff as well as to the defendant, but the further provision is that the party desiring to exercise the privilege, must offer good and sufficient surety that he will enter in such court, on the first day of its session, copies of all process, pleadings, depositions, testimony, and other proceedings in said suit, and that he will do such other appropriate acts as are required by law to be done for the removal of a suit from a State court into a Federal court.*

---

* 14 Stat. at Large, 559.

Evidence that the plaintiff complied with those conditions, it is conceded, is exhibited in the record, but the precise objection is that the cause of action is not one cognizable in the Circuit Court under any circumstances, and reference is made to the eleventh section of the Judiciary Act to support that proposition. By that section it is provided that no District or Circuit Court shall have cognizance of any suit to recover the contents of any promissory note, or other *chose in action* in favor of an assignee, unless such suit might have been prosecuted in such court to recover the said contents if no assignment had been made, except in cases of foreign bills of exchange.

All of the bonds were made payable to the order of the railroad company, and each was assigned by a writing on the back of the instrument to bearer by the company, and the payment of principal and interest was guaranteed by the obligees in the bond. Neither bonds of the kind nor the coupons annexed, where they are made payable to bearer or are indorsed to bearer by the original obligees or payees, are regarded as falling within the prohibition of the eleventh section of the Judiciary Act, as they pass from one holder to another by delivery without any formal assignment, as has been held by this court in several cases, to which reference 's made for the reasons upon which the rule is founded.*

Suppose, however, the rule is otherwise, still the objection must be overruled, as the suit was not originally commenced in the Circuit Court. Suits may properly be removed from a State court into the Circuit Court in cases where the jurisdiction of the Circuit Court, if the suit had been originally commenced there, could not have been sustained, as the twelfth section of the Judiciary Act does not contain any such restriction as that contained in the eleventh section of the act defining the original jurisdiction of the Circuit Courts. Since the decision in the case of *Bushnell* v. *Kennedy*,† all

---

* White v. Railroad, 21 Howard, 576; Thomson v. Lee County, 3 Wallace, 331.

† 9 Wallace, 387.

·doubt upon the subject is removed, as it is there expressly determined that the restriction incorporated in the eleventh section of the Judiciary Act, has no application to cases removed into the Circuit Court from a State court, and it is quite clear that the same rule must be applied in the construction of the subsequent acts of Congress extending that privilege to other suitors not embraced in the twelfth section of the Judiciary Act.*  Such a privilege was extended by the twelfth section of the Judiciary Act only to an alien defendant, and to a defendant, citizen of another State, when sued by a citizen of the State in which the suit is brought, but the privilege was much enlarged by subsequent acts, and the act in question extends it to a plaintiff as well as to a defendant, where the controversy is between a citizen of the State where the suit is brought and a citizen of another State, if the matter in dispute exceeds the sum of five hundred dollars, exclusive of costs, which shows that the jurisdiction of the Circuit Court in this case was beyond controversy.

III. Express authority to subscribe for the stock of the railroad company, and to issue the bonds in payment for the same, was conferred upon the corporation defendants by the twenty-eighth section of the act incorporating the railroad company, subject to the conditions therein prescribed, that the proposition to subscribe for the stock should be submitted to the qualified voters of the corporation, and the 'same section points out the steps to be pursued by the proper authorities to take the sense of the voters upon the subject. Authority was conferred by the legislative act upon the corporation defendants to issue bonds to the amount of one hundred and fifty thousand dollars, and the plea alleges that, by virtue thereof, they issued one hundred and fifty bonds, each of one thousand dollars, payable in thirty years from date, with coupons or interest warrants annexed providing for the payment of the interest semi-annually at the rate of six per centum per annum.  They bear the corporate seal

---

\* 1 Stat. at Large, 79.

of the city and are signed by the mayor, and are counter-
signed by the clerk, each bond containing on its face a cer-
tificate that it was issued in part payment of the subscription,
of one hundred and fifty thousand dollars, by the city of
Lexington, to the capital stock of the railroad company, by
order of the mayor and council of said city, as authorized
by a vote of the people taken in pursuance of the before-
mentioned act of the General Assembly of the State.*  Issued
by authority of law, as the bonds purport to have been, and
being, by the regular indorsement thereof, made payable to
bearer, they lawfully circulated from holder to holder by
delivery, and the plaintiff having purchased four of the
number in market overt, became the lawful indorsee and
holder of the same, together with the coupons annexed, and
the interest secured by the coupons being unpaid he insti-
tuted the present suit to recover the amount.   Evidently,
the *primâ facie* presumption in such a case is that the holder
acquired the bonds before they were due, that he paid a
valuable consideration for the same, and that he took them
without notice of any defect which would render the instru-
ments invalid.   Impliedly the plea admits that the bonds
were purchased before they were due, and that the plaintiff
paid a valuable consideration for the same, but the defend-
ants allege that he took the same with notice of the irregu-
larities in issuing the same, as set forth in the plea, and they
rely on those allegations as a complete defence to the action,
but the replication traversed the averment of the notice and
tendered an issue to the country, and the defendants, by de-
murring to the replication, confessed that the allegations of
the plea in that behalf were untrue, and that the plaintiff
was the *bonâ fide* holder of the bonds without notice of the
alleged defects in the inception of the instruments.

Coupons attached as interest warrants to bonds for the
payment of money, lawfully issued by municipal corpora-
tions, as well as the bonds to which they are attached, when
they are payable to order and are indorsed in blank, or are

---

\* Session *Acts of Kentucky*, 1852, p. 786.

made payable to bearer, are transferable by delivery and are subject to the same rules and regulations, so far as respects the title and rights of the holder, as negotiable bills of exchange and promissory notes. Holders of such instruments, if the same are indorsed in blank or are payable to bearer, are as effectually shielded from the defence of prior equities between the original parties, if unknown to them at the time of the transfer, as the holders of any other class of negotiable instruments.*

Admitted, as it is, that the corporation defendants possessed the power to subscribe for the stock and to issue the bonds, it is clear that the plaintiff is entitled to recover upon the merits, as the repeated decisions of this court have established the rule that when a corporation has power under any circumstances to issue negotiable securities the *bonâ-fide* holder has a right to presume that they were issued under the circumstances which give the requisite authority, and that they are no more liable to be impeached for any infirmity in the hands of such a holder than any other commercial paper.†

IV. Actions on simple contracts are barred by the limitation law of that State unless commenced within five years next after the cause of action accrued, and the second plea was filed as a bar to the action under that section of the statute of limitations, but the bonds described in the declaration are specialties not falling within that section of the statute. On the contrary, suits upon bonds may be maintained if commenced at any time within fifteen years next after the cause of action accrued, and it is well-settled law that a suit upon a coupon is not barred by the statute of limitations unless the lapse of time is sufficient to bar also a suit upon the bond, as the coupon, if in the usual form, is but a repetition of the contract in respect to the interest, for

---

* Moran *v.* Miami Co., 2 Black, 722; Mercer County *v.* Hacket, 1 Wallace, 83.

† Gelpcke *v.* Dubuque, 1 Wallace, 203; Knox Co. *v.* Aspinwall, 21 Howard, 539; Supervisors *v.* Schenck, 5 Wallace, 784; Bissell *v.* Jeffersonville, 24 Howard, 299.

the period of time therein mentioned, which the bond makes upon the same subject, being given for interest thereafte. to become due upon the bond, which interest is parcel of the bond and partakes of its nature and is not barred by lapse of time except for the same period as would bar a suit on the bond to which it was attached.\* Coupons are substantially but copies of the stipulation in the body of the bond in respect to the interest, and are so attached to the bond that they may be cut off by the holder as matter of convenience in collecting the interest, or to enable him to realize the interest due or to become due by negotiating the same to bearer in business transactions without the trouble of presenting the bond every time an instalment of interest falls due.

For these reasons we are of the opinion that the ruling of the Circuit Court was correct.

JUDGMENT AFFIRMED.

---

\* 2 Revised Statutes of Kentucky, 126 and 127; The City v. Lamson, 9 Wallace, 483.