## AMY *v.* DUBUQUE.

The Statute of Limitations of Iowa begins to run against coupon interest warrants from the time they respectively mature, although they remain attached to the bond which represents the principal debt.

ERROR to the Circuit Court of the United States for the District of Iowa.

The facts are stated in the opinion of the court.

Submitted on printed arguments by *Mr. James Grant* for the plaintiff in error, and by *Mr. O. P. Shiras* for the defendant in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

The question of limitation presented for our consideration upon this writ of error depends for its solution upon the statutes of Iowa.  " It is not to be questioned," said this court in *Hawkins et al.* v. *Barney's Lessee* (5 Pet. 457), "that laws limiting the time of bringing suit constitute a part of the *lex fori* of every country: they are laws for administering justice, one'

of the most sacred and important of sovereign rights." *McEl-moyle* v. *Cohen*, 13 Pet. 312.

It as is little to be questioned that "the courts of the United States, in the absence of legislation upon the subject by Congress, recognize the statutes of limitations of the several States, and give them the same construction and effect which are given by the local tribunals." *Leffingwell* v. *Warren*, 2 Black, 599; *Green* v. *Lessee of Neal*, 6 Pet. 291; *Harpending* v. *The Dutch Church*, 16 id. 455; *Davie* v. *Briggs*, 97 U. S. 628.

Guided by these established rules, we proceed to the consideration of the question before us, in the light both of the statutes of Iowa and of the construction given to them by the highest court of that State.

Our first inquiry is as to the cause of action set out in the petition. The plaintiff in error seeks to recover the amount of sundry interest-coupons annexed to bonds issued by the city of Dubuque in 1857, in payment of a subscription to the capital stock of a railroad company. The bonds are in the usual form of municipal securities, and were made payable on the 1st of January, 1877, at a bank in the city of New York, together with interest thereon at the rate of ten per cent per annum, payable semi-annually on each first day of July and January, on the presentation and surrender of the coupons at such bank as they should respectively become due by the terms thereof. Each bond was secured by a pledge of the shares of stock received in exchange therefor; and the stock pledged was placed in the hands of authorized trustees, who were empowered and required, at the request of the holder of the bond, and when the city was in default in the payment of either principal or interest, or any part thereof, to sell it, at public or private sale, in discharge of the unpaid principal or interest. The coupons sued on had not, at the institution of this action, been severed from the bonds to which they were annexed. Judgment is asked for the several instalments of interest, with interest on each instalment from the time it became due. The city contends that the action is barred by the Iowa Statute of Limitations. In that view the circuit judge concurred, and judgment was rendered for the city.

The code of Iowa declares that actions "founded on written

contracts " may be brought within ten years " after their causes accrue, and not afterwards." Code of 1873, sect. 2529. Such had been the law of that State for many years prior to the adoption of the code of 1873. We find the same provision in the code of 1851. Code of 1851, sect. 1659. What actions are founded on written contracts, and when causes of action accrue, within the meaning of the Iowa code, may be gathered from decisions of the Supreme Court of that State. The earliest decision to which we are referred is *Bahr* v. *Arndt*, 9 Iowa, 39. That was the case of a mortgage executed to secure a note payable ten years after date, with interest, at the rate of ten per cent per annum from date, payable annually. The court held that a foreclosure could be had before the maturity of the note for an instalment of interest due. In *Mann* v. *Cross* (9 id. 327), which was a suit to foreclose a mortgage, given to secure a note bearing ten per cent interest, payable annually, the court said : " Was he [the mortgagee] entitled to six per cent interest upon the interest annually due ? We think he was. The respondent was under a legal obligation to pay this interest at the end of the year ; it was a sum of money then due, without a contract fixing the rate of interest upon it, and for which he might have been sued. He was, therefore, bound to pay its legal value, which by our law, in the absence of a written agreement reserving more, is fixed at six cents on the hundred." *Hershey* v. *Hershey* (18 id. 24) was the case of a written agreement to purchase an interest in mill property at a valuation by appraisers, and " to pay the principal sum of such purchase on or before five years from the date of the appraisement, and in the mean time to pay interest for the full sum at the rate of seven per cent per annum, the interest to be paid semi-annually." It was held that an action at law could be maintained for any unpaid semi-annual instalment of interest. Said the court : " The payment of interest periodically is expressly stipulated for, and for a breach of this contract plaintiff may recover, just as clearly as for the non-payment of an instalment of principal. By their agreement the parties have made this interest, when it matures, not simply an incident of the debt, but *pro tanto* the debt itself. And plaintiff was not, therefore, bound to wait the expiration

of the five years from the date of the award to recover for the semi-annual instalment of interest." The court said further: "The plaintiff sues at law for the interest precisely as if he had separate notes for the same, and as he might do in case of an ordinary bond." To the same general effect is *Preston* v. *Walker*, 26 id. 205. In the subsequent case of *Baker* v. *Johnson County* (33 id. 151), the inquiry arose as to the time when limitation commenced to run upon a contract whereby Baker was employed to render services in behalf of the county in connection with its claim against the general government for swamp-land money and land scrip. The court held that Baker had a right of action from the date when his services were completed, and that his cause of action accrued at that date. *Callanan* v. *The County of Madison* (45 id. 561) was an action to recover back taxes which had been improperly exacted. The defence of limitation being interposed, the court said that " the cause of action accrues at the very moment of payment of the taxes, if at that time the tax was erroneous or illegal. The right of the plaintiff and the liability of the county do not depend upon the future acts to be done or suffered by either ; their relation as creditor and debtor is fixed by the illegality of the tax."

It seems from these authorities to be the settled law of Iowa: 1st, That where interest is, by contract, made payable at stated times, an action may be maintained therefor in advance of the maturity of the principal debt, and legal interest upon such interest recovered. 2d, That within the meaning of the Iowa Statute of Limitations the cause of action accrues when suit may be commenced for the breach of such contract. Both of these propositions are in line with the former decisions of this court. We have held in numerous cases not only that suit may be maintained upon unpaid coupons, in advance of the maturity of the principal debt and without producing the bonds, but that the holder of such coupons is entitled to recover interest thereon from their maturity. *Commissioners of Knox County* v. *Aspinwall et al.*, 21 How. 539 ; *Gelpcke* v. *City of Dubuque*, 1 Wall. 175 ; *The City* v. *Lamson*, 9 id. 477 ; *City of Lexington* v. *Butler*, 14 id. 282 ; *Clark* v. *Iowa City*, 20 id. 583 ; *Town of Genoa* v. *Woodruff*, 92 U. S. 502. This court has also had occasion to

consider the question as to when, upon principle, limitation commences to run. In *Wilcox* v. *Plummer's Executors* (4 Pet. 172), it was said : " The ground of action here is a contract to act diligently and skilfully; and both the contract and the breach of it admit of a definite assignment of date. When might this action have been instituted is the question ; for from that time the statute must run." Angell, Limitations, sect. 42; 2 Saunders, Pl. and Evid. 309.

This action is, beyond question, founded upon written contracts. The coupons in suit matured more than ten years prior to its commencement. Upon the non-payment, at maturity, of each coupon, the holder had a complete cause of action. In other words, he might have instituted his action to recover the amount thereof at their respective maturities. From that date, therefore, the statute commenced to run against them. The premises conceded, as they must be, there is no escape from the conclusion stated.

But it is insisted that this conclusion is in conflict with the former decisions of this court in *The City* v. *Lamson, supra; City of Lexington* v. *Butler, supra;* and *Clark* v. *Iowa City, supra.* In this counsel are mistaken. They misapprehend altogether the doctrines settled in those cases. The first arose under the Wisconsin Statute of Limitations, while the second involved the construction of a Kentucky statute. The decisions in those cases, as we declared in the third case, only established the doctrine that coupons were not mere simple contracts, but, under the local statutes of particular States, were to be regarded as specialties and separate contracts, like the bonds to which they are attached. After an examination of the preceding cases, we said that " it was not the intention of the court to decide that an action upon a coupon, detached from the bond, and negotiated to other parties, was not subject to the same limitations as an action upon the bond itself ; much less to hold that the coupons remained a valid and subsisting cause of action not only for the period prescribed for actions on the bond after its maturity, but for the additional period intervening between the maturity of the coupon and the maturity of the bond, however great that might be. The question before the court in those cases was only whether the time

the statute ran against the coupon was the longest or shortest period; — was it six or twenty years in the Wisconsin case, or was it five or fifteen years in the Kentucky case; — and the court held that the statute ran for the longest period, because the coupons partook of the nature of the bonds, and the statute ran for that period as to them."

The case of *Clark* v. *Iowa City* arose under the same Statute of Limitations which is invoked by the city of Dubuque for its protection in this case. It is cited by counsel for plaintiff in error in support of the proposition that limitation, under the Iowa statute, does not commence to run against a coupon until it is detached from the bond. There are some expressions in the opinion in that case which, standing alone, would seem to sustain that construction of the statute. But it is quite obvious, from the whole opinion, that the conclusion reached, upon the point necessary to be decided, did not rest upon the isolated fact that the coupons sued on had become severed from the bond. It did rest, mainly, upon the ground that the coupons sued on were specialties, separate written contracts, capable of supporting actions after their maturity, without reference to the maturity or ownership of the bonds. We distinctly held that all statutes of limitation begin to run when the right of action is complete. We said: " Every consideration, therefore, which gives efficacy to the Statute of Limitations, when applied to actions on the bonds after their maturity, equally requires that similar limitations should be applied to actions upon the coupons after their maturity." Our answer to the specific question certified to us was, " that the statute of Iowa, which extends the same limitations to actions on all written contracts, sealed or unsealed, began to run against the coupons in suit from their respective maturities." So far, then, as that case bears upon the defence of the city, it is an express authority for the position that the limitation of ten years prescribed by the Iowa statute applies equally to bonds and their coupons. The only material respect in which this case differs from that, is that the coupons in suit here have never been severed from the bonds, and are held by the owner of the latter, while in that case they were severed from bonds which had been previously paid off. But this difference cannot logically, or in

view of the Iowa decisions, affect the construction of the statute under examination. The right of the plaintiff in error to sue upon the coupons was complete after their non-payment at maturity, whether they had been previously severed or not from the bond. Upon principle, his failure or neglect to detach the coupon and present it for payment at the time when, by contract, he was entitled to demand payment, could not prevent the statute from running from that date. Such a construction of the statute would defeat its manifest purpose, which was to prevent the institution of actions founded upon written contracts after the expiration of ten years, without suit, from the time "their causes accrue;" that is, from the time the right to sue for a breach attaches. We adhere, therefore, to our decision in *Clark* v. *Iowa City*, that the Statute of Limitations began to run, under the Iowa statute, from the time the coupons respectively matured.

*Judgment affirmed.*