MATHER v. CITY AND COUNTY OF SAN FRANCISCO.

(Circuit Court of Appeals, Ninth Circuit.   March 3, 1902.)

No. 739.

**1.** MUNICIPAL BONDS—REMEDY FOR ENFORCEMENT—BONDS PAYABLE FROM SPECIAL FUND.

An act of the legislature of California (St. 1875–76, p. 433) authorized the board of supervisors of the city and county of San Francisco, in its discretion, to pass an order for the widening of Dupont street in the city. It provided that, in case the street should be so widened, all damages, costs, and expenses thereof should be paid by "bonds of the city and county of San Francisco," and that for the payment of the interest and principal of such bonds there should be levied a tax upon the lands found to be benefited by the improvement. It further provided that the city and county should not be liable for the debt so created. Under the law it was the duty of the city and county to make the necessary levies and collections required to provide the fund for the payment of the bonds. *Held*, that the bonds so issued, being nominally the bonds of the city and county, to be paid from a special fund, which it was the duty of such corporation to provide, the holders could maintain an action in a federal court to recover a judgment thereon against the city and county, to be paid from such special fund, and to be enforced by appropriate proceedings to compel it to provide such fund, as required by the act.

**2.** SAME—ACTION—PARTIES.

In an action against the city and county on such bonds, the plaintiff is not required to join as defendants the owners of the property upon which the taxes for their payment are required to be levied.

**3.** SAME—LIMITATION—INTEREST COUPONS.

Under the statute of limitations of California (Code Civ. Proc. § 337), which requires an action on a written instrument to be brought within four years, an action on interest coupons attached to municipal bonds is barred in four years from the time the coupons respectively matured, although such coupons have not been detached from the bonds.

In Error to the Circuit Court of the United States for the Northern District of California.

Joseph W. Mather, the plaintiff in error, brought an action against the city and county of San Francisco, the defendant in error, to enforce the payment of certain bonds which were issued and sold under the provisions of an act of the legislature of the state of California. St. 1875–76, p. 433. The complaint alleges: That on January 1, 1877, the defendant in error executed the bonds which are the subject of the action for the sum of $1,000 each, and for each bond 40 coupons for the semiannual payment of the interest thereon, payable on the 1st day of July and the 1st day of January of each year, and that the plaintiff, for a valuable consideration, purchased the bonds in good faith, and now holds the same. That the form of the bonds is as follows:

"United States of America, State of California,
"City and County of San Francisco.

"1,000                                                              1,000.

"Dupont Street Bond.

"The City and County of San Francisco, State of California,
"Will pay to ——, or the holder hereof, the sum of one thousand dollars, gold coin of the United States of America, twenty years from the date hereof, with interest thereon in like gold coin at the rate of seven per cent. per annum, payable half-yearly on the first day of July and the first day of January of each year upon interest coupons hereto attached. Principal and interest payable at the office of the treasurer of said city and county of San Francisco. This bond is issued under the provisions of an act of the legis-

lature of the state of California entitled 'An act to authorize the widening of Dupont street in the city of San Francisco,' approved March 23d, 1876, and is to be paid out of the fund that may be raised by taxation as therein provided, and may be redeemed at any time before its maturity, as is provided in said act. And this bond is further issued and taken by the holder hereof under the conditions expressed in section twenty-two (22) of said act, which is as follows: 'Section 22. The completion of the work described in this act shall be deemed absolute acceptance by the owners of all lands affected by this act and by their successors in interest of the lien created by this act upon the several lots so affected, and it shall operate as an absolute waiver of all claim in the future upon the city and county of San Francisco for any part of the debt created by the bonds authorized to be issued by this act and their successors in interest. This shall be regarded as a contract between said owners and the holders of said bonds and said city and county, and this provision shall be stated on the face of the bonds.'

"In witness whereof, the mayor, the auditor, and the city and county surveyor of said city and county of San Francisco, constituting the board of Dupont street commissioners, have respectively signed these presents, and caused to be affixed hereto the official seal of said city and county of San Francisco as of the first day of January, 1877.

"A. J. Bryant,

"Mayor of the City and County of San Francisco, and President of the Board of Dupont Street Commissioners.

"Geo. F. Maynard,

"Auditor of the City and County of San Francisco, and a Member of Said Board.

"Wm. P. Humphreys,

"City and County Surveyor of the City and County of San Francisco, and a Member of Said Board.

That each of the said coupons thereon, excepting as to the number of the coupon and of the bond and date of payment thereof, was and is in the words and figures following, to wit:

"Thirty Five.              Dupont Street Bond.              Coupon No.
   $35                                                              ——.

"The Treasurer of the City and County of San Francisco will pay bearer at his office thirty five dolls., U. S. gold coin, on Bond No. ——, six months' interest.                                                           A. J. Bryant,

"Mayor of the City and County of San Francisco, and President Board Dupont Street Commissioners."

The complaint alleged that the bonds and the interest coupons thereto attached were executed, issued, and disposed of by said defendant in error under the provisions of and for the purpose required by the act aforesaid, which was an act entitled "An act to authorize the widening of Dupont street, approved March 23, 1876." St. 1875–76, p. 433. That in and by said act provision was made for a sinking fund for the payment of said bonds by means of the collection from certain real property in said city and county, in said act described, of taxes in and by said act required to be assessed and levied thereon and collected therefrom in the manner and time specified by said act; said taxes to constitute a fund in control of the treasurer of the defendant in error for the redemption of said bonds in the manner provided by said act. That the said act further provided that there should be levied, assessed, and collected upon the lands mentioned in the act a tax sufficient to pay the interest on said bonds as the same should mature, which said tax was to be paid to the treasurer of the defendant in error, and constitute a part of the Dupont street fund, and to be paid out by said treasurer in the payment of the coupons attached to the said bonds as they should become due. The complaint further alleged that the plaintiff in error demanded the payment of his bonds and interest coupons from the treasurer of the defendant in error, and that, although the said interest coupons are past due and payable, the treasurer has not paid the same, except the coupons numbered from 1 to 4, inclusive, and that the bonds and the coupons from number 5

to 40 still remain unpaid and unredeemed, and that there never was collected by the defendant in error, or by its officers, or paid to its treasurer, under the provisions of the act or otherwise, a sum sufficient to meet the interest on the full amount of said bonds. The relief prayed for is that plaintiff in error have the amount due him upon his bonds and coupons ascertained and paid, and that he have judgment against the defendant in error therefor, "said judgment to be paid only from the fund and in the manner provided by said act of March 23, 1876, or by the enforcement of the lien, if any, thereby created against the lands referred to in the act, and not from the general funds or other property of the defendant in error." The defendant in error demurred to the complaint upon various grounds, those principally relied upon being that the action is barred by the statute of limitations of the state of California; that there is a defect of parties defendant, in that neither the owners of the land therein referred to as subject to taxation to raise money for the payment of the bonds and coupons nor the tax collector and treasurer of the defendant in error are made parties defendant, and for the reason that it appears affirmatively upon the face of the complaint that the defendant in error is not liable upon the bonds. The circuit court sustained the demurrer upon all of these grounds, and thereupon the complaint was dismissed, and judgment was rendered for the defendant in error for its costs.

Page, McCutchen, Harding & Knight, for plaintiff in error.

Franklin K. Lane and George W. Lane (Naphtaly, Freidenrich & Ackerman and E. F. Preston, of counsel), for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The question of the right of the plaintiff in error to prosecute the suit against the defendant in error, as and for the purposes set forth in the bill depends upon the principles involved in the discussion of the cases of Jordan v. Cass Co., 3 Dill. 185, Fed. Cas. No. 7,517; Cass Co. v. Johnston, 95 U. S. 360, 24 L. Ed. 416; and Davenport v. Dodge Co., 105 U. S. 237, 26 L. Ed. 1018. In Jordan v. Cass Co. the bonds had been issued by the county court of the county in the name of the county, but on behalf of a township. Although the suit was brought against the county, it was not contended that the bonds were the proper debt or obligation of the county, or that payment could be enforced against the property of the county or against the taxpayers thereof in the county at large. The bonds recited that they were authorized by a two-thirds vote of the township. The question was whether the bondholder could for any purpose maintain an action on the bonds against the county in whose name the bonds were made. The court said of the bonds:

"It is clear that they imposed no obligation on the county, and equally clear that the real or ultimate liability is on the taxable property within the township. But how, and against whom, is this liability to be enforced and made available?"

The court then referred to the fact that the legislature had provided the mode of raising the means for paying the bonds by the collection of taxes, and that it had enjoined upon the county court the duty of levying such tax, which duty, the court remarked, might be enforced by mandamus; but, since the federal court had no original jurisdiction in mandamus, the plaintiff could have no remedy in

that court unless he was entitled to judgment. The court thereupon reached the conclusion that a holder of the bonds might recover a judgment thereon against the county in whose name they were issued, "to be enforced, if necessary, not by an execution against the county, but by mandamus against the county court to compel it to levy upon the property in the township such taxes as the law has enjoined as a duty upon it." The court said:

"It seems clear when the legislature directed the bonds to issue in the name of the county that it meant to give the bonds additional legal value;" and added, "There must have been a purpose in requiring the bonds to be issued in the name of the county," and said further, "It seems to us that the provision that the bonds shall be issued in the name of the county implies a liability on the part of the county to be sued so far as is necessary to give effect to the rights of the holders of the bonds, consistently with the provisions of the constitution."

In Cass Co. v. Johnston, the bonds were issued under the same act as in the case last cited. The supreme court, speaking by Chief Justice Waite, said:

"It is finally objected that, as the bonds are in fact the bonds of the township, no action can be maintained upon them against the county. Without undertaking to decide what would be the appropriate form of proceeding to enforce the obligation in the state courts, it is sufficient to say that in the courts of the United States, we are entirely satisfied with the conclusions reached by the court below, and that a judgment may be rendered against the county, to be enforced, if necessary, by mandamus against the county court or the judges thereof, to compel a levy and collection of a tax in accordance with the provisions of the law under which the bonds were issued. The reasoning of the learned circuit judge in Jordan v. Cass Co., 3 Dill. 185, Fed. Cas. No. 7,517, is, to our minds, perfectly conclusive upon this subject."

In Davenport v. Dodge Co. the bonds had been issued under an act of the legislature of Nebraska, authorizing counties, cities, towns, and precincts to borrow money on their bonds, or to issue bonds to aid the construction of works of internal improvement in the state. The bonds recited that a certain precinct in the county of Dodge was indebted to the bearer, but they were signed by the county commissioners. The court said:

"When county bonds are issued under the statute in question, it is expressly provided that they shall constitute a debt against the county, to be paid by the levy and collection of taxes on all the taxable property within the county. If aid is voted by a precinct, bonds also are to be issued, differing only from county bonds in that they are to be paid from taxes levied upon property within a precinct."

After referring to the fact that a precinct could not become the obligor of precinct bonds, the court further said:

"We think it follows that the county, which does have a corporate existence, and can contract and be contracted with, and upon whose officers is imposed the duty not only of issuing the bonds, but of providing for the payment of them, is the political entity bound by the obligation and charged with the debt created thereby. * * * We think, therefore, that the special bonds which the county commissioners are to issue for the precincts are, in legal effect, the special bonds of the county, payable out of a special fund to be raised in a special way."

Turning now to the act under which the bonds in the present suit were issued, entitled "An act to authorize the widening of Dupont

street in the city of San Francisco," we find that it authorizes the board of supervisors of the city and county, if in the judgment of the board it be deemed expedient, "to pass an order or adopt a resolution" deciding to widen the street as permitted in the act. It provides that, if it be so widened, all damages, costs, and expenses thereof shall be paid by "bonds of the city and county of San Francisco." For the payment of the bonds and the interest coupons thereon it declares that there shall be levied, assessed, and collected annually, at the time and in the manner that other taxes are levied, assessed, and collected in said city and county, a tax upon the lands which shall be found to be benefited by the widening of the street. For the payment of the principal it provides for the creation of a sinking fund by a tax levied, assessed, and collected in the same manner, sufficient each year to pay one-twentieth of the principal of said bonds; and it requires that the money so raised by taxation shall be paid to the treasurer of the city and county, to be by him paid out only on said bonds. It provides that the street, when widened, shall be "sewered, graded, sidewalked, and paved" by the municipal authorities in accordance with the provisions of law applicable thereto. In short, the act bestows upon the municipal corporation authority to widen the street if it shall so elect, and directs it to issue its own bonds for the payment of damages, and to pay the bonds and the interest thereon by taxes levied in the same manner and at the same time as other city and county taxes are levied, but requires it to confine the tax to the special property benefited by the widening of the street. The street, when widened, was not widened by the act of the legislature, therefore, but by the act of the city and county, through its board of supervisors. The act of the legislature stood in the place of charter authority. The bonds when issued, were the bonds of the city and county, and payment thereof would undoubtedly have been enforceable as payment of other bonds of the city and county, but for the provision contained in section 22 of the act, absolving the city and county from liability for the debt so created.

The ground upon which the right to bring suit against the county in the three decisions we have referred to was maintained was not that the county was under obligation to pay the bonds, or was in any way liable for the debt which they represented, but upon the ground that the bonds were in form the bonds of the county, and a duty had been imposed upon the county with reference to the payment thereof. Although the debt was in each case primarily the debt of the township, the county stood in such relation to the township and to the bonds as to require the exercise of its official authority in the matter of levying, assessing, and collecting taxes, wherewith to pay the bonds. We think the present case comes clearly within the principle of those decisions. The provision in the act of the legislature that the city and county of San Francisco shall not be liable for the debt created by the bonds does not absolve it from responsibility to provide the means for the payment of the bonds in the manner prescribed by the act. The counties which were the defendants in the suits above mentioned were not liable in any way for the payment of the bonds or the debts thereby represented, yet they were under

obligation to provide a fund for the payment. The provision in the act exempting the city and county of San Francisco from liability for the debt means only that the debt is not the debt of the city and county, and is not enforceable against it as such. It does not mean that the city and county has received legislative authority to refrain from doing the very things which the act of the legislature commanded it to do. The legislature certainly did not intend that the bondholders should have no remedy on their bonds. As was said by Judge Dillon in Jordan v. Cass Co., "Undoubtedly the legislature designed there should be a remedy upon these bonds." The means provided by the legislature for the payment of these bonds is plainly pointed out in the statute. Assuming, as we must, upon the demurrer, that the averments of the bill are true, it is clear that the defendant in error has been remiss in the performance of its duty. The bonds have not been paid for the reason that the fund for the payment thereof has not been created as the law required that it should be created. The present suit has no other aim than to compel the defendant in error to do what it ought to do, and what the act required it to do.

It is said that the ruling of the circuit court is supported by the cases of Meath v. Phillips Co., 108 U. S. 553, 2 Sup. Ct. 869, 27 L. Ed. 819, and Liebman v. City and County of San Francisco (C. C.) 24 Fed. 705. In the first of these cases the bonds had been issued under an act of the state of Arkansas providing for the division of certain overflowed lands into levee districts for the purpose of reclaiming the lands, and for the taxation of such lands to pay the expenses incurred in that behalf. The business was to be managed by levee inspectors, and payment was to be made by their drafts on the levee treasurer, appointed by the county court of the county to receive and disburse according to law all funds raised from levee taxes in the county. The county court was to levy a tax upon the property benefited, to be collected like other taxes, and to be paid to the levee treasurer. The court referred to the decisions which we have just discussed, and distinguished the case then pending from those cases upon the ground that in the Case of the County of Cass the law provided in terms for the issue of bonds in the name of the county, and that the court had also held that the same was true in the Case of the County of Davenport; "consequently," said the court, "there were in those cases obligations of the counties payable out of special funds. Here, however, there has been a manifest intention to bind the levee districts by the obligation incurred, and not to make the county in its political capacity responsible for the payment of the debts that were created for levee purposes under these laws." The language so quoted points out the essential distinction between the case at bar and the Phillips Co. Case. The bonds in the present case are the bonds of the city, and are payable out of a special fund to be provided by the city. So, in the Liebman Case, the question at issue was the liability of the city and county of San Francisco on the Montgomery avenue bonds, which were issued under an act of the legislature, the object of which was to open a public street in the city of San Francisco. The

act described the land, and declared that it was taken and dedicated for a street. It provided that the value of the property taken and the damages incidental thereto be assessed upon lands within a certain described district by a board of public works created for that purpose, their decision to be subject to appeal to the county court. The bonds were not to be the bonds of the city and county, but were to be signed by the members of the board, and attested by its seal. The act provided for an annual tax upon the property benefited to create a sinking fund for the payment of the bonds, and it declared that the city and county should not, in any event whatever, be liable for the payment of the bonds, nor any part thereof, and that any person purchasing them or otherwise becoming the owner accepted the same upon that express stipulation and understanding. The bonds contained the recital, "The treasurer of the city and county of San Francisco will pay," etc. The case was heard before Field, Circuit Justice, and Sawyer, Circuit Judge, who held that the bonds were not the bonds of the city and county, and that the municipal corporation could not be sued thereon for any purpose. Mr. Justice Field said:

"The so-called bonds to which the coupons in the controversy were attached are not obligations of the city and county. They are not executed by it, or under its seal, or by its agents or officers, but by certain parties constituting the board of public works. * * * The so-called bonds, which are in fact only orders or promises of the board of public works that the treasurer will pay to the holder of the amounts designated, cannot be the foundation of any liability of the city and county."

Referring to the Cases of County of Cass and County of Dodge, the learned justice remarked:

"In all of them the bonds were issued in the name, or were in law the obligations, of the municipality against which the judgment was prayed, though in some of them the funds for the payment of the judgment were to be collected by a special tax upon the property of a particular district."

The concurring opinion of Sawyer, Circuit Judge, was based on the following considerations: That the act was not an amendment of the city charter, and conferred no authority whatever upon the corporation to do any act in its corporate capacity; that it imposed no duty upon the municipality relating to the opening of the street, or to the collection or the payment of the cost of the improvement; and that the bonds were not the bonds of the city and county. Of the County of Cass and County of Dodge Cases Judge Sawyer said:

"The bonds in the former case were issued by the county in the name of the county by express direction of the statute. In the latter case the bonds were issued by the county commissioners, the governing body of the county, in pursuance of an express provision of the statute for a precinct indebtedness. * * * These cases are therefore entirely different from the case under consideration."

The learned judge proceeded to remark that the city and county in its corporate capacity "has no relation to those bonds, and no duties to perform in connection therewith. The duties to be performed, whatever they may be in connection with the bonds and coupons in suits by parties who are also officers of the city and county, are, in my judgment, to be performed by them, under the

provisions of the statute, as agencies and instruments of the state, and not as agents or officers of the city." The very language in which the two distinguished jurists who decided that case expressed their views distinguishes the principles involved therein from those in the case at bar. They denied the right of the bondholder to sue the city upon the ground that the bonds were not the bonds of the city, and that the city was not empowered to, and was under no obligation to, perform any act in connection therewith, either in the opening of the street, the issuance of the bonds, or the payment thereof.

The demurrer of the defendant in error raises the point that the suit cannot be maintained against the city and county alone, but that the owners of the real estate which would be subject to taxation to raise funds to pay the bonds and coupons must be joined as codefendants. We do not think the complainant in such a bill is required to bring into the suit any other defendant than the obligor on the bonds. The cause of suit is against the maker of the instrument on which the suit is brought, not against the taxpayers whose property may be taxed to pay the same. In a suit against a municipal corporation the inhabitants are not parties, and cannot be made parties, although their property may be taken to satisfy the judgment against the corporation. Lane v. Fourth School Dist., 10 Metc. 462; Chandler v. Railroad Com'rs, 141 Mass. 208, 5 N. E. 509.

The demurrer raises the further objection that the cause of action upon all but two of the coupons is barred by the statute of limitations. Section 9 of the act provides that the bonds shall be payable in 20 years, and that coupons for the semiannual interest shall be attached to each bond. The bonds bear date January 1, 1877. The present suit was commenced June 22, 1900. By the statute of limitations of California (section 337, Code Civ. Proc.) actions on such written instruments are barred after four years. All the coupons matured more than four years prior to the commencement of this suit, except the last two, which became due, respectively, July 1, 1896, and January 1, 1897. In Leffingwell v. Warren, 2 Black, 599, 17 L. Ed. 261, it was said:

"The courts of the United States, in the absence of legislation upon the subject by congress, recognize the statutes of the several states, and give them the same construction and effect which are given by the local tribunals."

That doctrine has been affirmed in Green v. Neal's Lessee, 6 Pet. 291, 8 L. Ed. 402; Harpending v. Dutch Church, 16 Pet. 455, 10 L. Ed. 1029; Davie v. Briggs, 97 U. S. 628, 24 L. Ed. 1086; and Amy v. Dubuque, 98 U. S. 470, 25 L. Ed. 228. In the case last cited it was also held that the statute of limitations of the state of Iowa begins to run against coupon interest warrants from the time when they respectively mature, although they remain attached to the bond which represents the principal debt. In reaching that conclusion the court proceeded upon principles which apply generally to all cases of actions upon coupons, except where the question is controlled by some peculiar statutory provision or decision of a

state court establishing a different rule. Those principles undoubtedly apply to the case at bar, and require us to hold that the statute of limitations has run as to all coupons except the last two, unless a different construction has been placed upon the statute of California by the decision of the supreme court of that state in Meyer v. Porter, 65 Cal. 67, 2 Pac. 884, in which it was said: "And as the coupons partake of the nature of the bonds to which they belong, and against which the statute of limitations had not run, they were not barred by the statute." It is claimed for this utterance of the court that it announces the rule that an action upon coupons is not barred until the statute of limitations has run against the bonds to which they were attached. We do not so understand the decision, although it is impossible, from the meager statement of the case, to determine the precise bearing of the remarks of the court. We are inclined to think that by the use of the language so quoted it was intended only to affirm the well-settled rule that in the application of the statute of limitations the coupon, although it may not be in form the same kind of instrument as the bond to which it belongs, will partake of the contractual nature of the latter, and both will be governed by the same statute of limitations; that is to say, if the bond be a specialty, the coupon, which may be a simple promise to pay, will be considered a specialty, and be governed by the statute of limitations applicable to specialties. City of Lexington v. Butler, 14 Wall. 282, 20 L. Ed. 809. But if, indeed, it be conceded that the decision in Meyer v. Porter decides all that is contended for it by the plaintiff in error, it is still not a decision which controls us in the present case. It is true that the federal courts follow the latest decisions of the highest courts of the state on questions of the construction of the constitution or statutes of the state, and that after a state statute receives settled construction by a state court of last resort such construction becomes as much a part of the statute as the text itself. Douglass v. Pike Co., 101 U. S. 687, 25 L. Ed. 968. But the federal courts are not bound to follow such a decision of a state court unless it was made prior to the time when rights were acquired under the instrument which is in controversy in the action, and they will decline to follow it if such subsequent decision of the state court is contrary to its own previous ruling or to the previous decisions of the supreme court of the United States. Carroll Co. v. Smith, 111 U. S. 556, 4 Sup. Ct. 539, 28 L. Ed. 517. The bonds in controversy in the present suit were issued long prior to the decision of the supreme court of California in Meyer v. Porter. The law of that case formed no part of the law of the contract. Those who acquired bonds under the act authorizing the widening of Dupont street acquired the same before the state court had placed a construction upon the statute of limitations as applicable thereto. We are not bound, therefore, to follow Meyer v. Porter, even if it announces—which we think it does not— the doctrine contended for by the plaintiff in error, a doctrine contrary to generally accepted authority, and directly the reverse of that which had been announced by the decisions of the supreme court of the United States in City of Kenosha v. Lamson, 9 Wall.

477, 19 L. Ed. 725; City of Lexington v. Butler, 14 Wall. 282, 20 L. Ed. 809; Clark v. Iowa City, 20 Wall. 583, 22 L. Ed. 427; and as interpreted in Amy v. City of Dubuque, 98 U. S. 470, 25 L. Ed. 228. We find no error in the judgment of the circuit court sustaining the demurrer as to all the coupons save the last two, but as to the other grounds we think the demurrer should have been overruled.

The decree will be reversed, and the cause remanded for further proceedings not inconsistent with the foregoing views.