ROCKINGHAM, JUNE, 1887.*

SANBORN, *Ex'r, v.* CLOUGH & *a.*

The will of B., after providing for the payment of his debts and funeral charges, and giving certain money legacies, disposed of his residuary estate as follows:

"Fifth. After the payment of all my just debts and funeral charges, and the expense of a proper set of grave-stones, I order and direct the rest and residue of all my money in banks, stocks, and bonds to be paid to Arthur W. Evans . . . , for his own. But not until said Arthur W. Evans shall have become of age . . . , prior to which time, should occasion demand, I order this bequest to be held by my executor for said Arthur W. Evans at his maturity.

"Sixth. I give and bequeath to my nephew, LaRoy S. Clough, all my personal property (not including money in banks, stocks, and bonds)," &c.

*Held,* (1) that the legacy to Evans vested in him at the death of the testator, charged with the payment of the debts, funeral charges, and the expense of grave-stones; (2) that he is entitled to the income of the legacy during his minority; (3) that detached coupons passed with the bonds; (4) that the legacy to Clough is charged with the payment of the money legacies and expenses of administration.

BILL IN EQUITY, by the executor, asking for a construction of the will of Albion W. Bailey. The will, executed May 18, 1885, directs (1) the payment of debts and other funeral charges; (2) gives a legacy of $25 to a niece; (3) gives a legacy of $25 to a nephew; (4) gives a legacy of $100 to one Batchelder; and disposes of the residue of his personal estate as follows:

"Fifth. After the payment of all my just debts and funeral charges, and the expense of a proper set of grave-stones, I order and direct the rest and residue of all my money in banks, stocks, and bonds to be paid to Arthur W. Evans, son of Charles A. Evans of Kensington, N. H., for his own. But not until said Arthur W. Evans shall have become of age (21 years of age), prior to which time, should occasion demand, I order this bequest to be held by my executor for said Arthur W. Evans at his maturity.

"Sixth. I give and bequeath to my nephew LaRoy S. Clough, all my personal property (not including money in banks, stocks, and bonds), and the *income* of my farm and all my real estate by his paying the taxes, and keeping up suitable repairs thereon, for his, during his life."

* Doe, C. J., was not present at this term.

The testator died in June, 1886. The legatee, Evans, is eleven years of age. His father has been appointed his guardian since the decease of the testator. Clough is forty-five years of age. The will was written by the testator's physician. His personal estate at his decease consisted of money on hand, railroad stocks, deposits in savings-banks, and bonds (including $28 in severed coupons), appraised at $5,417.69, and other personal estate appraised at $2,811.93. The claims against the estate do not exceed $600.

The questions on which the instruction of the court is asked are,—1. From what fund shall debts, legacies, funeral charges, expenses of administration, and grave-stones be paid? 2. How and to whom shall the income of the fund mentioned in the fifth clause of the will be paid during the minority of Arthur W. Evans? or, Shall the income be allowed to accumulate during that period?

*A. O. Fuller*, for Evans. The pecuniary legacies, amounting to $150, and the expenses of administration, should be paid from property not specifically bequeathed, for as to these the will is silent. The debts, funeral charges, and the expense of grave-stones must also be paid from property not specifically disposed of by the will, unless the will contains clear directions to the contrary. *G. L.*, c. 203, s. 13; 2 Redf. Wills 873. The words of the statute are clear and explicit, and one who claims exemption from their effect must sustain his claim by no less clear and explicit language in the will. The only words of the will from which such intention is sought to be inferred are in the fifth clause—"after the payment of all my just debts and funeral charges, and the expense of a proper set of grave-stones." But these words occur in almost all wills; and as they merely direct performance of a duty which the law would enforce without such direction, they are mere words, like the other pious verbiage contained in this and other wills. They are of no more significance than the fact that the scrivener begins his labors in the name of God, with a direction to pay debts and funeral charges as soon as may be. Words intended merely to indicate that the testator was a godly and just man, who wished his debts paid and his body decently buried before his legatees should taste his bounty, cannot with propriety be tortured into an expression of intention to change the rule of law as to what portion of his estate should be first chargeable with such expenses. Indeed, the real reason why these directions for payment of debts, &c., occur in this will is evident. The physician who wrote it entertained well founded doubts of his ability to do the thing in proper shape without help, and therefore sought aid and guidance from one of those "*Optimi consiliarii mortui, scilicet libri*" (a book of forms), from which he copied such high-sounding phrases as seemed to him most meaningless, and therefore least dangerous to use. The will begins in the name of the Great Physician, and directs payment of debts, &c., because these are forms given in the book of forms, and

are supposed to be nothing but forms. If the testator could be asked how they happened to be inserted in his will, he would tell us that they were put there by the doctor who wrote the will, and that he let them stay because they sounded all right, and he did not see what harm they could do.

The bequest to Arthur W. Evans in the fifth clause is specific. A specific legacy is a gift by will of some particular thing or specified fund, pointing out not how much but what the legatee shall take. Redfield mentions, as examples, "the horses which testator had in his stables; all the plate which should be in a particular house," &c. 2 Redf. Wills 459, and note. The bequest to Clough in the sixth clause is residuary, as much so as if the will had said "all the rest of my personal property." The wording of the bequest, giving all, and then in a parenthesis excluding what has been already disposed of, is of no more consequence than the spelling or the needless use of capital letters. The intent must govern, and the intent is manifestly the same as if this bequest had been residuary in form and wording. Debts, legacies, funeral charges, expense of administration and grave-stones, then, must be paid from the personal property not bequeathed to Evans; and this results in paying them from the cash on hand, the source from which they naturally would be paid, and which is understood to be amply sufficient. If these bills could have been presented to the testator in his lifetime, there is no doubt that if he had paid them at all it would have been from the very fund which I have pointed out, the cash on hand; and it is more probable than otherwise that he had this large sum on hand for the very purpose of defraying these very expenses.

The coupons mentioned in the case are of course to be treated as part of the bonds from which they were cut. Every bond, with its coupons, may be regarded as one bond with a number of coupons "incidental" to it, or as one big bond and a number of little ones. The coupons do not lose their character of bonds by being cut off: bonds they always were, and bonds they always will be until they are paid. Whether overdue or not yet matured, they belong to him to whom the testator gave his "money in bonds."

The income of the fund mentioned in the fifth clause of the will should be paid, during the minority of Arthur W. Evans, to his guardian. The legacy to Evans is vested. A vested legacy is one given in possible perpetuity, though it may be subject to be divested on the happening of some particular event, as in this case by the death of the legatee under age. 1 Rob. Wills (3d ed.) 209. The language of this bequest, directing the money to be paid to Evans "for his own," imports an outright, absolute gift as clearly as language can. The provision that it shall not be paid over until he attains his majority does not make it contingent. *Pinney* v. *Fancher*, 3 Bradf. Sur. Rep. 198; *Furness* v. *Fox*, 1 Cush. 134; Preston Legacies 66, 99. And a bequest of the *corpus* to trustees,

or anything that indicates an intention to separate the bequest from the general personal fund, is also regarded as constituting the legacy a vested one.    Preston Legacies 73.    The fact that there is a gift over in case the legatee dies under age, does not change its character as a vested legacy.    *Pinney* v. *Fancher, supra;* Preston Legacies 99; *Woodman* v. *Madigan,* 58 N. H. 6.

The interest accruing on this fund until the happening of the devesting contingency belongs to the minor, and should be expended for his benefit.    *Pinney* v. *Fancher, supra; Woodman* v. *Madigan, supra; Furness* v. *Fox, supra; Howland* v. *Howland,* 100 Mass. 222.    The provision that the fund shall not be paid to Evans for his own until he is of age, and shall meanwhile, "should occasion demand," be held by the executor for him, indicates only a desire that the money be not given the infant to squander, nor in any way be so disposed of as not to be forthcoming for Clough in case Evans dies during his minority.    The fact that Evans had no guardian when the will was written, nor at any time during the testator's lifetime, shows why it was thought occasion might demand that the executor retain the fund during Evans's minority.

The testator did not intend the fund to be retained by his executor at all events, but only in case such a course should be necessary for the protection of Evans and Clough.    The use of the words "should occaasion demand" shows this, and negatives the idea that he intended to have this large fund needlessly rust for a dozen years in the hands of the executor. and meanwhile benefit no one, leaving the minor dependent on his father for support, and without means of obtaining a suitable education.    The will contains no provision for accumulation of income; and no benefit could result from such a course.    The chances are that the boy Evans will live to attain his majority; and it is by no means sure that the legatee Clough will live to profit by Evans's death, even should the latter die under age.

It is not necessary, nor do we ask, that any of the principal be paid to the guardian; but we do say, that as the testator is presumed to have intended a benefit to the legatee Evans,—something more than "great expectations" from a tied-up fund,—that intention should be carried out by paying the income to his guardian for him.    Should any portion of it not be needed by him, the probate court can see to it that none is wasted.    Meanwhile the executor should qualify as trustee.

*Marston & Eastman,* for Clough.    That the testator intended to charge the legacy mentioned in the fifth clause of his will with the payment of his debts, funeral charges, and the expense of gravestones, clearly appears from the language employed.    He does not direct his executor to pay all his just debts, &c., and then proceed to make a division of the entire remainder of his personal estate;

but he says, "After the payment of all my just debts . . . , I order and direct the rest and residue of all my money in banks, stocks, and bonds to be paid to Arthur W. Evans." The order to the executor contained in these words is to pay the charges mentioned out of the money in banks, stocks, and bonds, and the residue of the same money to Evans. It can mean nothing else. A testator is not supposed to be ignorant of the condition of his estate; he is also to be considered as intending a benefit to the object of his gift. *Wallace* v. *Wallace*, 23 N. H. 149. The inventory of the personal property shows that by the will Evans gets, in round numbers, $4,700—considerably more than half of the entire personal estate, and, except the cash, the better portion of it. The whole context of the will shows an intention to divide the estate about equally between the legatees. The testator, knowing the condition and value of his estate, intentionally burdened the legacy to Evans with the obligations named in his will. To compel Clough to pay all the debts and legacies, and expenses of every kind, would absorb all the money and leave him at his time of life with only the life estate in the realty, and a lot of second hand goods of a perishable nature.

The legacy to Clough in the sixth clause is specific. How much and what the legatee is to have are as capable of ascertainment as if the articles had been enumerated. Not only how much but what the legatee is to have clearly appears. 2 Wms. Ex. 992, 996; *Wallace* v. *Wallace, supra.* If the legacy mentioned in article fifth be also specific, the debts, funeral charges, and expense of grave-stones must be paid out of this as directed by the testator, and the money legacies and the expense of administration should be paid from both legacies in equal shares, all the property having been specifically bequeathed

The legacy to Evans is contingent. The property is given to him "for his own, but not until" he "shall have become of age (21 years of age)." The words "but not until" are equivalent to "when," so the same meaning would have been expressed if the will had read, "I order and direct the residue of all my money in banks, stocks, and bonds to be paid to Arthur W. Evans for his own when he shall become of age," &c. 2 Wms. Ex. 1035, and cases cited in note *s; Clapp* v. *Stoughton,* 10 Pick. 463; *Goss* v. *Nelson,* 1 Burr. 226; *Doe* v. *Moore,* 14 East 604; *Shattuck* v. *Stedman,* 2 Pick. 468. We are aware of the decision of this court in *Brown* v. *Brown,* 44 N. H. 283, but submit that the testator did not intend that the legacy should vest, in the case at bar.

*Wiggin & Knight,* for Sanborn, executor.

SMITH, J. It is contended that the words in the fifth clause of the will, "After the payment of all my just debts and funeral charges, and the expense of a proper set of grave-stones," are a

mere repetition of the direction in the first clause to perform a duty which the law would enforce without such direction, and being only verbiage, that the fifth clause may be read as if the words had not been repeated. One objection to this is, that the direction as to grave-stones is not in the first clause; and a more serious objection is, that the construction contended for gives no force to the words "rest and residue." The testator's language is, "After the payment of all my just debts and funeral charges, and the expense of a proper set of grave-stones, I order and direct the rest and residue of all my money in banks, stocks, and bonds to be paid to Arthur W. Evans, son of Charles A. Evans, of Kensington, N. H., for his own." The words "for his own" show that the testator's intention was to bequeath the property mentioned to the person to whom he directs it to be paid. It is as if he had said, "I give and bequeath the rest and residue of all my money," &c. By "rest and residue of all my money in banks," &c., he meant all his money deposited in banks and invested in stocks and bonds, after payment of his debts, funeral charges, and the expense of grave-stones, or subject to such payment. No other construction of this clause is consistent with the natural and ordinary meaning of the language used.

The severed coupons are included in the legacy to Evans. They are in legal effect equivalent to separate bonds for the different instalments of interest. *Clark* v. *Iowa City*, 20 Wall. 583, 589; *Commissioners, &c.,* v. *Aspinwall*, 21 How. 539, 546; *The City* v. *Lamson*, 9 Wall. 477, 483; *Amy* v. *Dubuque*, 98 U. S. 470.

By the sixth clause he gives to Clough all his personal property except money in banks, stocks, and bonds, which he had already bequeathed to Evans. Clough is residuary legatee of his personal estate, and is charged with the payment of the three money legacies in the second, third, and fourth clauses, and with the expenses of administration. G. L., *c.* 203, *s.* 13.

The legacy to Evans vested in him at the death of the testator. The provision as to his reaching the age of twenty-one years is not a limitation annexed to the substance of the gift, but relates to the time of payment. In keeping with this construction is the further provision that if necessary the legacy is to be held in the hands of the executor as trustee for him until he reaches that age. *Brown* v. *Brown*, 44 N. H. 283; *Ordway* v. *Dow*, 55 N. H. 11. As the legacy vested in the legatee at the death of the testator, the income belongs to him, although the principal may not be payable till he arrives at the age of twenty-one. If the testator's intention was that the fund should accumulate till the legatee should arrive at that age, we should expect to find it expressed in the will. The absence of any language to that effect is evidence from which a contrary intention may be inferred. No motive appears for permitting so large a sum to accumulate during the minority of the legatee,—a period in his life when the income can be more profita-

bly expended upon his education and support.   The income is payable to his guardian.

                                               *Case discharged.*

BINGHAM, J., did not sit: the others concurred.