S. H. THREADGILL, Administrator of G. B. THREADGILL, Deceased, v. COMMISSIONERS OF ANSON COUNTY.

*Action on Coupons of County Bonds—Presumption of Ownership — Principal and Agent — Tax-Collector — Instructions to Jury—Statute of Limitations—Amendment of Pleadings—Practice.*

1. While the general rule is that the holder of negotiable paper is presumed to be the owner, and that the burden is on the defendants to show the contrary by a preponderance of evidence, yet where an agent of a principal is furnished with money to buy, and does buy, up claims against the latter, it is his duty, if he asserts a right to the claims, to show by a preponderance of testimony that the claims are his; therefore,

2. Where a tax-collector of a County, having by authority of the County received coupons of County bonds in payment of taxes, brought suit against the County to recover on coupons of the same kind which he claimed to own, it was improper on the trial to instruct the jury that the possession of the coupons raised a presumption of his ownership.

3. Such erroneous instruction was not cured by a subsequent charge that the fact of the plaintiff's having received the coupons as tax-collector raised a suspicion which it was his duty to rebut by further evidence that he acquired them *bona fide.*

4. Where, in a charge reciting that certain facts raised a suspicion as to plaintiff's (a tax-collector's) ownership of coupons, the trial Judge added the statement that "plaintiff claims to have rebutted such suspicion by showing when and from whom he got some of them and that he owed none of the taxes for the years he received the coupons"; *Held,* That such addition to the charge was erroneous, as invading the province of the jury, it being equivalent to saying that "the plaintiff has shown you when and from whom he got the coupons and claims that this rebuts the suspicion."

5. Where there is a variance between the record proper and the statement of the case on appeal, the former governs.

6. An amended pleading does not exclude a party from the benefit of allegations in the original pleading.

7. The Statute of Limitations begins to run against coupons of
   bonds at the maturity, not of the bonds, but of the coupons.

CIVIL ACTION, commenced by summons issued October
7th, 1871, and tried before *Bryan, J.*, and a jury, at Febru-
ary Term, 1894, of ANSON Superior Court. There was a
verdict and judgment thereon for the plaintiff, and defend-
ants appealed. The facts appear in the opinion of Asso-
ciate Justice FURCHES.

*Messrs. J. A. Lockhart* and *Burwell, Walker & Cansler*,
for plaintiff.

*Messrs. R. E. Little* and *Battle & Mordecai*, for defend-
ants (appellants).

FURCHES, J. :   This is an action brought by the intestate
of plaintiff upon a lot of coupons amounting as plaintiff
alleges to $2,331, and interest thereon from the date of
their maturity.   On the trial below the plaintiff recovered
and had judgment for the full amount claimed and interest
thereon, from which judgment the defendants appealed to
this Court, assigning quite a number of errors.   Among the
errors assigned by defendants are the following, which we
briefly state as follows :

1. That the court erred in holding that plaintiff being in
the possession of the coupons sued on, the presumption is
that he is the owner of the same, and that it devolved upon
the defendant to rebut this presumption by a preponder-
ance of evidence.

2. That the court erred in admitting in evidence exhibit
" H " under the objection of defendant.

3. That the court erred in refusing to give defendant's
prayer for instruction that the coupons sued on were pre-
sumed to be paid by the lapse of time.   And in disregard
of this prayer, charging the jury that if they found from

the evidence that plaintiff's intestate was the owner of the coupons at the commencement of this action, they should answer the second issue " no," which was the same as instructing the jury that they had not been paid.

It was in evidence and not denied that the coupons were taken from bonds issued by the County of Anson, prior to 1860, in payment of the subscription of that county to the Wilmington, Charlotte & Rutherford Railroad Company; that said coupons became due in 1862, 1863 and 1864, and that the bonds from which they were detached became due in 1880.    It was admitted that G. B. Threadgill, intestate of plaintiff, was sheriff of Anson county from 1859 to 1868; and as such was *ex officio* tax-collector for the county. And there is evidence tending to show that, as such sheriff and tax-collector, he was authorized and instructed to take such coupons as those sued on in payment of taxes, and that he did receive such coupons in his official capacity in payment of taxes due to the county.

We recognize the rule as laid down by the court on the trial below as being the general rule, that the holder of negotiable paper is presumed to be the owner, and the burden is on the defendant to show by a preponderance of evidence that he is not.    But we are of the opinion that this rule does not apply in this case.    It certainly cannot be that an agent—a fiduciary—of a principal, furnished with the means of the principal to buy up claims against the principal, and uses such means in buying up the claims, should be allowed to say to his principal, "I've got the claims (the coupons) in my possession, and I am going to hold them as my own unless you can ' prove by a preponderence of evidence ' that they are not mine."    This rule would reverse the law of centuries, as applied to principal and agent.    We understand the law to be just the reverse of that laid down by His Honor, that it is the duty of the

fiduciary, the agent (who is in possession of the facts), to show if he claims the coupons as his own, to the satisfaction of the court and jury that they are his. The burden of proof is upon him. *Allen* v. *Bryant*, 7 Iredell Eq., 276. It is doubtful whether Threadgill, the agent of the county, with the means of the county (the tax lists) in his hands, instructed to take up the coupons of the county, and, undertaking to do so, had the right to go into the market as a purchaser on his own account. *Boyd* v. *Hawkins*, 2 Dev. Eq., 207. But we will not multiply authorities on this point of the case.

But defendant's counsel contended that if the court was in error in holding and instructing the jury that the burden was on defendant to prove that plaintiff was not the owner of the coupons sued on, this error was corrected by the following, which is also a part of the charge of the court: " In response to defendant's first prayer the court charged that if the jury believed the plaintiff's intestate was directed and authorized, as sheriff, by the proper county authorities to receive the coupons in payment of taxes and that he did so receive them it raises a probable ground of suspicion against plaintiff's being the owner of the coupons; and his being the holder of the coupons, the presumption that he is the owner is rebutted, and it devolves on plaintiff to rebut this suspicion by further evidence that he acquired the coupons *bona fide*. This the plaintiff claims he has done by showing when and from whom he got some of them, and that he owed none of the taxes for the years he received the coupons. Defendants excepted to refusal to give the first prayer of instruction and to the instructions given."

We do not agree with the counsel of plaintiff. The court had just before that part of the charge quoted above, charged the jury in the most positive and decided terms that plaintiff's possession of the coupons was a presump-

tion that he was the owner of them and the burden was upon the defendants to show that he was not, as follows: "That plaintiff having produced the coupons is presumed in law to be the owner thereof, and the burden of proof is on defendants to show that he is not; and defendants must establish by a preponderance of testimony that plaintiff is not the owner of the coupons, and if defendants have not satisfied the jury by a preponderance of testimony that the coupons are not the property of plaintiff, they shall answer the first issue 'Yes.' Defendants excepted." We do not think that so undecided an instruction as that relied upon by plaintiff could have the effect to correct the positive error contained in the charge last above quoted.

Indeed, we are of the opinion that that part of the Judge's charge relied upon by plaintiff is erroneous. It is confused and undecided and does not charge the law as we understand it to be, as between principal and agent. It may be that plaintiff's intestate acquired the coupons *bona fide*, but as the agent of defendants, and with proper explanation the charge might have been proper. But, as it is stated and left in the charge, we can not see that it was any benefit to the jury, and may have been misleading. But as it appears to us, the Court in this instruction invaded the province of the jury in the sentence following the words "bona fide." The Court does not say that plaintiff *claims* that he has shown you "when and from whom he got some of his coupons," and that he has thereby rebutted "this suspicion," which would have been perfectly legitimate. But the Judge says that the plaintiff *claims* to have rebutted this suspicion "by showing when and from whom he got some of them." So the sentence thus stated is that plaintiff has shown you "when and from whom he got the coupons," and claims that this rebuts the presumption. We do not think that this was correct.

THREADGILL *v.* COMMISSIONERS.

The next exception we will consider is as to the admission of Exhibit "H" by plaintiff under the objection of defendant. The defendant during the course of the trial had introduced exhibit "A" which is as follows:

"Statement of Anson County coupons presented to the Commissioners of Anson County by Gideon B. Threadgill and by said Board referred to Henry W. Ledbetter, John J. Dunlap and John C. McLauchlin, County Auditing Committee.

"Coupon No. 3, from bond No. 1, due January 1, 1862; endorsed by J. McLendon; $70. Etc., etc."

Mr. Gideon B. Threadgill makes the following statement touching the coupons above described: "These coupons came into my possession before the year 1865. I took them up in payment for taxes. I found them about a month ago among other papers at my residence, not knowing up to that time that I had them in my possession. I have no recollection whatever of the circumstances under which I retained and filed away these coupons. I have receipts of James A. Leak given in 1864, and in March, 1865, for $8,000, which was paid to him for the support of soldiers' families. One of these receipts, for $5,000, dated November 19, 1864, specifies that the money was a part of railroad funds. My impression is, I collected the railroad taxes for 1862–'63–'64, and in paying the same to Mr. Leak for the purposes set forth in his receipt, paid him in cash (Confederate money) and kept the coupons which I had taken in in the way of taxes." In answer to the question, "Do you know whether you settled the taxes for the years 1862–'63–'64." Mr. Threadgill answers, "I do not. I have no recollection of a settlement of the taxes for those years. I have receipts showing settlement in full of all the other taxes for the years 1862–'63–'64, but no receipts showing a settlement of the railroad taxes. I find from a

statement from the Auditor's office in Raleigh that the amount of taxes levied for railroad purposes in 1862 was $2,106; and I find from an old tax book that the amount levied in 1863, for the same purposes, was $2,500. I cannot find the amount levied for same purpose in 1864. There is no further statement which I can now make that will throw any light upon the matter."

"G. B. Threadgill makes oath that the facts set forth in the foregoing statement, to the best of his knowledge, information and belief, are true.

G. B. THREADGILL.

"Sworn to and subscribed before me, August 25, 1880.
JOHN C. McLAUCHLIN, *C. S. C.*"

After defendant had offered Exhibit "A," the plaintiff offered Exhibit "H" in reply. Defendant objected, the objection was overruled and defendant excepted. Exhibit "H" is as follows :

" The Finance Committee met to-day at the request of Gideon B. Threadgill, Esq. Present, Col. Henry W. Ledbetter, John J. Dunlap and John C. McLauchlin. Gideon B. Threadgill, Esq., makes the following statement in addition to and amendatory of the statement made by him heretofore, to-wit, on the 25th day of August, 1880, touching the county coupons in his possession, of which an inventory is hereto annexed : "Since my former statement I have become satisfied that I did not receive all of said coupons before the year 1865, and that I received a portion of them since the year 1865. I received the two, indorsed by F. Milton Kennedy, at the house of J. B. Burns in Wadesboro after the close of the war. After the year 1865 I did not collect any back taxes. After the close of the war, after the year 1865, I did not collect any back taxes after the close of the war. I find that there was for the year 1866

taxes against Mr. Kennedy amounting to six or seven dollars. I am satisfied that I received the three coupons indorsed by W. G. Wright since the year 1865. I find upon examination of my receipt book that I did not settle in full the taxes for the year 1864. I have my tax books for the years 1862 and 1863. From these books I find that the levies for payment of coupons for those years were for 1862 $2,100, for 1863 $2,500."

The abstract from the Auditor's office shows only the total levies and not the amounts levied for specific purposes. Here the further consideration of this matter was postponed until August 17, 1881.

"WEDNESDAY, August 17, 1881.

"The committee met according to agreement. Present, Henry W. Ledbetter and John C. McLauchlin. Mr. Gideon B. Threadgill continues his statement, as follows: 'Upon reflection and in consideration of the fact that I find in the package of coupons in my possession some, to-wit, those endorsed by F. M. Kennedy and those endorsed by W. G. Wright, which I recognize as having been received by me since the year 1865, I am convinced that I received the whole batch since said year 1865. These coupons are my property. I suppose they were taken by me partly in payment of taxes, and if so, the county has been paid, as I have settled in full the taxes for the years 1866–'67.'

G. B. THREADGILL.

"Sworn to and subscribed before me, the 17th day of August, A. D. 1881.

JOHN C. McLAUCHLIN, *C. S. C.*"

And the plaintiff contended that Exhibit "H" was a part of the same declaration or statement as Exhibit " A " introduced by defendant, and was competent on that account. And we find that in the statement of the case on appeal it

is said to be a part of the same transaction or declaration as exhibit "A". But we find from an examination of the record that this is not true; that exhibit "A" was made on the 25th day of August, 1880, and that the committee to whom it was made, made the following report thereon, the same day it was made to them, Marked Exhibit "E", as follows:

"We, Henry W. Ledbetter, John J. Dunlap and John C. McLauchlin, Auditing Committee for Anson county, submit the following report to the honorable Board of Commissioners of Anson county, to-wit: Gideon B. Threadgill, late sheriff of said county, submitted to us a lot of coupons taken from the Anson County Railroad Bonds, amounting in the aggregate to twenty-two hundred and sixty-one dollars ($2,261). We have prepared a descriptive inventory of said coupons and have appended thereto Mr. Threadgill's statement touching them, sworn to and signed by himself. Said inventory and statement are appended hereto marked 'Exhibit A.' We have not been able to find anything beyond Mr. Threadgill's statement to throw any light upon the question whether said coupons have been heretofore paid by the county and are the property of Mr. Gideon B. Threadgill.

"Respectfully submitted,
                         "J. C. McLAUCHLIN,
                         "J. J. DUNLAP,
                         "H. W. LEDBETTER,
"August 25, 1880.                    *Auditing Committee.*"

And we find from the record that more than a year after the report quoted above, the committee made another report which is very evident to us was the result of plaintiff's statement "H," made at his own request, and concluded on the 17th day of August, 1881. This report is as

follows : "The claim of G. B. Threadgill, based upon Anson county coupons, amounting to $2,261, having been referred to us with instructions to report our judgment as to the question, whose property are said coupons, respectfully report that, upon a careful consideration of all the facts and circumstances brought to our knowledge in the investigation of this matter, we have to state, in our judgment, said coupons are the property of the county of Anson.   September 12, 1881.   (Signed by J. C. McLauchlin, H. W. Ledbetter and J. J. Dunlap, finance committee)." So, it appears from *the record* that exhibit "A" and exhibit "H" are not a part of the same conversation or declaration. And it has been too often and too recently held by this Court to need the citation of authority, that when the record proper differs from the statement of the case on appeal, the statements in the *record proper* control.

It is true that statements "A" and "H" are about the same subject matter, but they are not parts of the same conversation or admission, so as to make "H" competent evidence for the plaintiff, because the defendant had introduced exhibit "A."   And this being the only ground upon which we can see that it could be competent, and indeed being the only ground upon which the learned counsel contend that it was competent, we must sustain the defendant's exception and hold that there was error in admitting exhibit "H" in evidence on behalf of plaintiff.

The next exception we propose to examine is that arising upon the presumption of payment from the lapse of time.   It is admitted that the coupons sued on were detached from bonds issued before 1860 and falling due in 1880 ; and that the coupons became due in 1862, 1863 and 1864.   The coupons partook of the same dignity as the bonds from which they were detached, and being dated before 1860 and falling due before 1868, the statue of lim-
116—40

itations does not apply. But they may be barred, or rather paid by the lapse of time and the statute of presumptions. Revised Code, Ch. ·65, Sec. 18. But plaintiff in the first place denies that the coupons sued on are barred by the lapse of time and contends that the bonds from which they were detached did not become due until 1880, and they would not be presumed paid till 1890; and the coupons would be good as long as the bonds from which they were taken would be good. And plaintiff further contends that defendant is not entitled to this defence for the reason that it is not made by the pleadings. Plaintiff admits that defendant pleaded payment in the original answer, but he says that in the amended answer the defendant denies that it has paid these coupons; that the two answers are contradictory, and that the rule is that where there is an amended pleading filed the case must be tried on the amended pleadings, and not on the original, and cites some cases from New York which he says sustains this contention. We have not examined these cases, because, if any such rule obtains in New York, we know the practice is well settled to be otherwise here. Indeed, we find from the record that plaintiff amended his complaint in 1885, the action having been commenced in 1881. But we do not propose to hold the plaintiff down to his amendment, and exclude him from the benefit of his original complaint. And neither do we propose to deprive the defendant of the benefit of the original answer. Nor do we think the rule as to the limitation, contended for by plaintiff, is the law. To sustain the contention that the coupons are not barred for ten years after the bonds became due, would be equivalent in this case to saying that they would not be barred for thirty years after they fell due. We cannot do this without violating every rule of law, that we know of, in regard to the lapse of time and the presumption of payment. The cou-

pons, though they have the dignity of the bonds, constitute an indebtedness of their own, independent of the bonds, fixing their own time of maturity—as in this case becoming due nearly twenty years before the bonds from which they were detached became due. The right of action accrues when they become due, and the owner does not have to wait till the bonds become due. And this, *the right of action*, is what starts the statute. This view seems to us to be so thoroughly sustained by the "reason of the thing" and the logic of the case, that it requires no authority to support it. But the case of *Amy* v. *Dubuque*, 98 U. S., 470, is directly in point and sustains the view we have taken of this matter.

This only leaves the question of pleading to be considered, and we have seen that defendant is entitled to the benefit of the original answer and of both amended answers. The proper plea to raise this defence, is payment—this is elementary learning. It is admitted that defendant has properly pleaded payment in his original answer. But defendant in the fourth section of the amended answer, made at Fall Term, 1882, uses this language, that defendant denies that it "ever made payment of any part of said coupons, as alleged, to the plaintiff as owner of said coupons." This was said, replying to the fourth section of plaintiff's complaint, which contains the following averment: "That on these said coupons the sum of seventy dollars has been paid, leaving a balance of principal due the plaintiff, &c." And we think a fair interpretation of the language used by defendant in the fourth article of the amended answer, is a denial of the payment of this seventy dollars, and not a denial that the coupons were paid.

So we do not think the answer is subject to the criticism of being inconsistent. But if it were, it has been held by

this Court that a defendant may plead as many pleas as he wishes, and even inconsistent pleas. *Reed* v. *Reed*, 93 N. C., 462, and cases there cited. And defendant in its last amended answer pleads the statute of limitations for ten years. And it was held by this Court in *Pemberton* v. *Simmons*, 100 N. C., 316, that this was sufficient to enable the Court to consider the case on the statute of presumptions. We do not think the pleadings in *Reed* v. *Reed* or *Pemberton* v. *Simmons*, *supra*, good pleading, and do not recommend them as models. But this Court has many times sustained very imperfect and defective pleadings, where there was a sufficient statement of facts to constitute a cause of action, and where it could see that the opposite party had not been misled and injured thereby. But while the answers in this case are not as concise and logical as they might be, we cannot say that they do not, with sufficient clearness, state the defendant's ground of defence.

So our conclusion is that there was error in the Judge's charge that the burden was on defendant to prove that plaintiff was not the owner of the coupons sued on. We also think there was error in admitting exhibit "H" in evidence for plaintiff. And we are also of the opinion that the Court erred in instructing the jury that the statute of presumptions did not bar the plaintiff's claim. This is a question of law and fact and should have been submitted to the jury upon the evidence in the case, with proper instructions as to whether the plaintiff had rebutted the presumption of payment.

There are quite a number of other exceptions which will probably not arise on another trial, and we have not considered them. There is error and the defendant is entitled to a new trial, and it is so ordered.

New Trial.