EDDY v. CITY AND COUNTY OF SAN FRANCISCO.

(Circuit Court of Appeals, Ninth Circuit. June 8, 1908.)

No. 1,430.

MUNICIPAL CORPORATIONS—SUIT TO ENFORCE PAYMENT OF BONDS—LACHES—UNEXCUSED DELAY IN BRINGING SUIT.

    A bill to charge a municipal corporation as a voluntary trustee under a legislative act which required it to levy and collect taxes within a certain improvement district, and from the fund collected to pay the interest and principal of certain bonds, of one of which complainant was the

owner, which shows on its face that the defendant ceased and refused to perform any of such required acts 25 years before the bill was filed, that no interest had been paid since that time, and that the bonds matured 8 years before suit, and alleges no facts which excuse the delay in bringing suit, discloses such laches as to defeat the right to maintain the suit and renders the bill demurrable.

Appeal from the Circuit Court of the United States for the Northern District of California.

For opinion below, see 148 Fed. 272.

On January 4, 1904, the appellant filed her bill against the appellee to charge the latter as trustee with the payment of certain bonds and coupons owned by the appellant, which had been issued under the act of the Legislature of the state of California entitled "An act authorizing the widening of Dupont street, in the city and county of San Francisco," approved March 24, 1876 St. Cal. 1876, p. 433, c. 326. The bonds were issued on January 1, 1877, and were payable 20 years after that date. To each bond were attached 40 coupons for interest for the period of six months, payable, respectively, on January 1st and July 1st of each year, up to January 1, 1897. The bill alleges that the appellant is the owner and holder of 10 of such bonds, and that all of the coupons save the first 5 are unpaid; that under the provisions of the statute referred to the appellee became a voluntary trustee of the appellant for the collection of the taxes therein provided for, and for the application thereof to the payment of the interest coupons and the bonds; that the appellee and its officers have failed and neglected to levy and collect the taxes provided for, and to provide a sufficient fund to pay the interest coupons as the same accrued, or to redeem the bonds. The bill prayed for an accounting of the sums collected as taxes under the provisions of the act, and that the appellant have judgment for the amount so due her, with interest thereon, and that the appellee be required to levy and collect taxes as required by said act sufficient to pay the sum due. To the amended bill, filed by the appellant on November 4, 1905, a demurrer was interposed for want of equity, and on the further grounds that the appellant had an adequate remedy at law, that the suit was barred by the statute of limitations, and that the appellant had lost her right to equitable relief by her laches, and that there was nonjoinder of necessary parties, in that the owners of the property subject to taxation were not made defendants to the bill.

By the act under which the bonds were issued it was provided by section 1 that the width of Dupont street might be increased, and by section 2 that the value of the land taken to widen the street, and the damages to improvements on such land, and all expenses incident to the widening of the street, were to be treated as the cost of widening the street, and were to be assessed upon the district described in the act as benefited thereby. Section 3 marked the boundaries of the district upon which was to be imposed the cost of the improvement. By section 4 the mayor, auditor, and county surveyor of the appellee and their successors in office were constituted a board of Dupont street commissioners, who were to be paid each $2,000 as compensation for their services. Sections 5, 6, and 7 prescribed the methods of apportioning the damages and imposing the benefits so to be assessed. Section 8 provided for the interposition with the county court of objections by parties interested in the land within the district to the assessment so made by the board, and authorized the court to hear the same, and to either approve the assessment or refer the same back to the board, with directions to modify the same. Section 9 authorized the issuance of the bonds and coupons, and section 11 authorized the mayor, auditor, and treasurer of the appellee to sell and dispose of bonds sufficient to realize the money requisite to meet and discharge all the expenses and damages arising from the widening of the street, the money arising therefrom to be known and designated as the "Dupont Street Fund," and authorized the board of commissioners to give notice by publication that they were prepared to pay in full all unpaid demands and liabilities as fixed by the final report of the board, and, upon receiving

from the persons entitled thereto proper deeds and quittances, the board was to give to them orders upon the treasury for the amount shown to be due according to the final report, payable out of said Dupont street fund. By section 12 it was provided that a majority of the property owners fronting on Dupont street, between Market and Bush streets, might defeat the improvement and relieve themselves from any burden on account thereof by filing a written protest within the time specified, and that unless within that time, a majority of the property owners on Dupont street, between Bush and Filbert, should petition therefor, there should be no widening of Dupont street north of Bush street, and that portion would be excluded from the operation of the act. By section 13 it was provided that there was to be levied, assessed, and collected annually, at the same time and in the same manner as other taxes in the city and county, a tax upon the lands within the district sufficient to pay the interest on said bonds as the same matured, said tax to be collected out of the said land only; that, when collected, the moneys were to be paid to the treasurer of the appellee, and were to constitute a part of the Dupont street fund, and were to be paid out by said treasurer only in payment of the coupons attached to said bonds when the same became due, and there was also to be levied and assessed on the same lands, and collected at the same time and manner as other taxes, an assessment for each $100 valuation sufficient to raise one-twentieth of the principal of the bonds, which was to constitute a sinking fund for the redemption of the bonds. By section 21 it was provided as follows: "The board of supervisors of the city and county of San Francisco are hereby authorized, if in the judgment of said board it should be expedient that Dupont street should be widened in accordance with and in the mode prescribed in this act, to express such judgment by resolution or order in such form as they may deem advisable, within sixty days after the passage of this act, and in the event that such board of supervisors within said period of sixty days after the passage of this act should fail to pass an order or adopt a resolution declaring it expedient to widen Dupont street under the provisions of this act, no further proceeding shall be had or taken under this act for any purpose whatever, and said street shall remain of its present width; but if said board pass such resolution, then all proceedings thereafter shall be taken under the provisions of this act." Section 22 provides as follows: "The completion of the work described in this act shall be deemed an absolute acceptance by the owners of all lands affected by this act and by their successors in interest of the lien created by this act upon the several lots so affected, and it shall operate as an absolute waiver of all claim in the future upon the city and county of San Francisco for any part of the debt created by the bonds authorized to be issued by this act, and their successors in interest. This shall be regarded as a contract between said owners and the holders of said bonds and said city and county, and this provision shall be stated on the face of the bonds."

W. T. Hume, C. M. Simpson, and John H. Dickinson, for appellant.

Wm. G. Burke, Garrett W. McEnerney, and D. Freidenrich, for appellee.

Before GILBERT, Circuit Judge, and DE HAVEN and HUNT, District Judges.

GILBERT, Circuit Judge (after stating the facts as above). This is a suit brought upon Dupont street bonds of the same issue as those which were involved in the decision of this court in Mather v. City and County of San Francisco, 115 Fed. 37, 52 C. C. A. 631. In that case a bondholder brought an action at law upon certain bonds in order to obtain a judgment preliminary to an application for mandamus to the officers of the city and county for the collection of

the taxes for the payment of the same. The present case is a suit in equity, the purpose of which is to charge the appellee as a voluntary trustee of the appellant for the collection of the taxes provided for in the act authorizing the widening of Dupont street, and it is the contention of the appellant that such a suit is maintainable under the authority of Warner v. New Orleans, 167 U. S. 467, 17 Sup. Ct. 392, 42 L. Ed. 239, and New Orleans v. Warner, 175 U. S. 120, 20 Sup. Ct. 44, 44 L. Ed. 96. We find it unnecessary to decide whether the doctrine applicable to the present case is found in those decisions, or in the case of Peake v. City of New Orleans, 139 U. S. 342, 11 Sup. Ct. 541, 35 L. Ed. 131, which is cited and relied upon by the appellee. Assuming that by exercising the option granted to it by section 21 of the act, and adopting the resolution which it was thereby authorized to adopt, the appellee became a voluntary trustee for the collection of the taxes and the payment of the same to the bondholder, we are of the opinion that the facts alleged in the bill affirmatively show that the appellant's prayer for equitable relief must be denied on account of her laches. From the bill it appears that the principal of the bonds became due and payable January 1, 1897, and that the 35 unpaid interest coupons attached thereto became due and payable semi-yearly from the year 1879 to the year 1897; in other words, at the time of the commencement of the suit nearly 8 years had elapsed since the accrual of the cause of action on the bonds, and 25 years had elapsed since the accrual of the cause of action on the first unpaid coupon. In New Orleans v. Warner, 175 U. S. 120–130, 20 Sup. Ct. 44, 48, 44 L. Ed. 96, the court said:

"Having thus voluntarily assumed the obligations of a trustee with respect to this fund, it cannot now set up the statute of limitations against an obligation which, as such trustee, it had undertaken and failed to perform. The rule is well settled that in actions by cestuis qui trust against an express trustee, the statute of limitations has no application, and no length of time is a bar. While that relation continues, and until a distinct repudiation of the trust by the trustee, the possession of one is the possession of the other, and there is no adverse relation between them. * * * To set the statute in motion the relation of the parties must be hostile, and so long as their interests are common, or their relations fiduciary, as in the case of landlord and tenant, guardian and ward, vendor and vendee, tenants in common, or trustee and cestuis qui trust, the statute does not begin to run. This language of the opinion is expressly relied upon by the appellant in this case; but it is to be observed that in the case then under consideration the court proceeded to say that the trust had never been repudiated by the city, and pointed to the fact that one of the defenses set up in the answer was that the city had applied itself with great diligence and to the full extent of its ability to improve and make serviceable the drainage work and to proceed with the collection of the drainage taxes, and did all in its power to prosecute the collection of the same. 'Indeed,' said the court, 'the whole gist of the answer is that the city has executed its trust faithfully, so far as it was possible to do so, by collecting assessments against private persons, but has not accounted for taxes assessed against itself because it is not legally responsible therefor. There is no claim throughout the answer that the city disavowed the trust.'"

Such is not the case presented upon the bill now under consideration. It is true that the appellee has not answered setting forth its attitude to the subject-matter of the suit; but it is well settled that, where the

bill shows upon its face that the plaintiff by reason of lapse of time and of his own laches is not entitled to relief, the objection may be taken by demurrer. Maxwell v. Kennedy, 8 How. 210, 12 L. Ed. 1051; National Bank v. Carpenter, 101 U. S. 567, 25 L. Ed. 815; Lansdale v. Smith, 106 U. S. 391, 1 Sup. Ct. 350, 27 L. Ed. 219.

Turning to the bill in the present case, we find therein the allegation that "at divers and sundry times since the year 1877 and the commencement of this suit" the appellant has demanded payment of the bonds and the interest coupons, and that payment has been refused; that the appellee, "in violation of the terms of said trust and its duty and obligation thereunder, did not keep and perform the conditions and obligations of said trust, and has wholly abandoned the same without notice of any kind to this plaintiff, and did not perform the duties imposed upon it as trustee as defined in said act, but, on the contrary, failed and neglected, during the time specified in said act, or at any time, to assess, levy, and collect, or cause to be assessed, levied, and collected, from the property specified in said act or otherwise, taxes sufficient to pay the interest coupons, and to redeem the said bonds." The bill proceeds to set forth the excuses proffered by the appellee for failing to fulfill the obligations imposed upon it by the act of the Legislature, which excuses are, among others, that suits were brought in 1880 to enjoin the tax collector from selling property in said district for payment of taxes assessed for the purpose of carrying out the scheme of the act. In brief, the bill presents a case where the alleged trustee had 25 years before the commencement of this suit ceased and refused to perform any of the acts required to be performed by it under the terms of the statute, and, while it alleges affirmatively that the appellee never at any time asserted to the appellant that it was not liable as trustee or otherwise upon such bonds and coupons, it makes no allegation that the default and refusal of the appellee to collect taxes and pay coupons which accrued 25 years before the commencement of the suit was not well known to her at the time. In fact, the contrary appears from the bill. The allegation is that, although the trustee repudiated the trust, it never advised her personally of that fact. This is clearly insufficient to excuse appellant's laches, and her waiting all these years before taking any step whatever to enforce her rights.

It is true it is well settled by the authorities that the statute of limitations has no application to an express continuing trust not disavowed to the knowledge of the cestui que trust. But when the trust is repudiated, and knowledge of the repudiation is brought home to the cestui que trust, the case is brought within the ordinary rules of limitations and laches. In the leading American case of Kane v. Bloodgood, 7 Johns. Ch. (N. Y.) 90, 11 Am. Dec. 417, Chancellor Kent expressed the rule which has since been followed in numerous decisions:

"The trusts intended by the courts of equity not to be reached or affected by the statute of limitations are those technical and continuing trusts which are not at all cognizable at law, but fall within the proper peculiar and exclusive jurisdiction of this court."

In Speidel v. Henrici, 120 U. S. 377, 7 Sup. Ct. 610, 30 L. Ed. 718, the court said:

"Independently of any statute of limitations, courts of equity uniformly decline to assist a person who has slept upon his rights and shows no excuse for his laches in asserting them."

That language was used in a case in which it was held .that a bill in equity against persons holding a fund in trust for the common benefit of the members of a voluntary association living together as a community cannot, whether the trust is lawful or unlawful, be maintained by one who has left the vicinity and for 50 years afterwards has taken no step to·claim any interest in the fund; and the court quoted the language of Lord Camden in Smith v. Clay, 3 Bro. Ch. 640, as follows:

"A court of equity has always refused its aid to stale demands, where the party slept upon his rights and acquiesced for a great length of time. Nothing can call forth this court into activity but conscience, good faith, and reasonable diligence. Where these are wanting, the court is passive, and does nothing. Laches and neglect are always discountenanced; and therefore, from the beginning of this jurisdiction, there was always a limitation to suits in this court."

In 28 Amer. & Eng. Ency. of Law, 1134, it is said:

"But when the trust relation is terminated in any way, as by the open repudiation and disavowal of the trustee, or by some default on his part, or by vesting of the legal title in the cestui, or in some other way, and such termination is known to the beneficiary, then, and not until then, the possession of the trustee becomes adverse and the statute begins to run in his favor."

In Boyd v. Munro, 32 S. C. 249, 10 S. E. 963, the court said:

"For it is well settled that even in cases of express technical trusts, where a trustee does an act expressive of an intention to repudiate the trust, the knowledge of which is brought home to the cestuis que trust, the statute will commence to run at that time."

The obligation resting upon the appellee was not a mere naked trust to hold property for a cestui que trust. The trust, if there were a trust, was an active one—one which required of the appellee the prompt and diligent performance of certain prescribed acts. According to the bill it not only failed to perform these duties, but at least as early as 1881 it failed to protect the interest of its cestuis que trustent and to intervene in defense of a suit to enjoin its tax collector from collecting the assessments. All these acts, public as they were, and not alleged to have been unknown to the appellant at the time thereof, constituted a repudiation of the trust, and imposed upon the appellant the duty of timely action to protect her interests. The application of the doctrine that equity will withhold relief from those who have delayed the assertion of their rights depends upon the circumstances of each case. It does not always depend upon mere lapse of time. It involves, also, the question of change of situation which occurring during neglectful repose may render relief inequitable. The real parties in interest here, the parties to be affected by the relief which is sought, are the owners of the land included in the district made taxable for the improvement. In the years that have passed since the maturity of the bonds and coupons it is reasonable ·to assume that a very considerable portion of that land may have been conveyed or

incumbered and that extensive improvements may have been made thereon. There was evidently nothing of record to indicate that, when so sold or incumbered or improved, such lands were to be subjected to the taxation which the appellant now seeks to impose upon them. Every consideration of justice and equity required the appellant to move more promptly for the protection of her rights. More than a score of years before this suit was commenced she had her legal remedy by an action at law to obtain judgment upon the unpaid coupons preliminary to compelling the collection of taxes for their payment. Instead of so doing, she chose to wait until the great lapse of time and the changed situation of the parties in interest have rendered inequitable the interposition of a court of equity in her behalf.

The decree is affirmed.